[Civ. No. 14846.  First Dist., Div. Two.  Mar. 28, 1952.]

FRED C. MOTZER et al., Respondents, v. R. P. PAOLI, Appellant.

Roos & Jennings, Leslie L. Roos and Russell Westover for Appellant.

Gardiner & Riede for Respondents.

JONES, J. pro tem.—This appeal is from a judgment awarding damages for injury to plaintiffs' property as the result of flooding and the deposit of detritus and debris thereon.

Plaintiffs' lands are situate in the city of San Rafael and comprise about 3 acres highly improved with drives, gardens, swimming pool and a dwelling. They had lived in this home for 17 years prior to the flooding. The lands of Paoli lie adjacent to and above those of plaintiffs. The Paoli lands were unimproved and for the 17 years that the plaintiffs had occupied their property the water from the Paoli lands had drained down into a natural watercourse and across the property of the plaintiffs. In January 1948, Paoli commenced the construction of roads and streets on his property in the process of developing it into a subdivision. In the course of the construction work he created a fill 12 or 14 feet deep across the watercourse draining the lands of the parties. In the bottom of the fill he installed a drain or culvert. After the fill was made the utility district supplying water to residents in that area laid an 8-inch pipe line across the fill under a right-of-way agreement with Paoli. The fill was made up of loose materials and was dumped without compacting and was in no way reinforced. The roads and drains above the fill were so constructed as to drain areas into the watercourse which under natural conditions did not drain into it. Roadways connected with the fill at each end sloping upgrade away from it in both directions.

In September 1948, Motzer, by letter, called the attention of Paoli to the fact that the culvert under the fill was too small to carry the normal runoff of the water from behind the fill, and that the whole fill would probably wash out. He asked that the situation be corrected. Nothing came of this letter and in January 1949, Motzer had his attorney send

letters to both Paoli and his engineer in charge of construction calling attention to the drainage situation and demanding that something be done to eliminate the danger. On March 11, 1949, during a rainstorm of normal seasonal intensity the fill went out releasing the water behind it. When the fill went out the water main broke adding its water to the general flood. The property of plaintiffs was deluged and there was left upon it a residue of rocks, sticks, mud and other detritus.

What happened to the fill was described at the trial by Mr. Lux, an eyewitness to the incident, and who was construction superintendent for Paoli. He testified that he was standing near the fill at about 12:30 p. m. on March 11, 1949, and observed the waters flowing there at that time; that he saw the fill wash out, and that at that time there was no break in the pipe line; that the water which was washing out the fill was rain water coming down the road from both directions; that he saw the fill washing out and about 10 feet of the pipe line was exposed at the time he arrived; that the fill continued to wash out until a full length, or joint, of pipe was exposed. In response to the question, "Then what happened to the pipe," he answered, "The fill pulled out and pulled the pipe with it."

As we gather from the opening brief of the defendant he urges two grounds for reversal of the judgment. He first contends that the liability for the damage resulting from the washing out of the fill rests upon the Marin Municipal Water District, the owner and operator of the water main, and secondly, that the trial court erroneously applied the doctrine of absolute liability, or liability without fault, in deciding the case. The argument is also made that plaintiffs failed to plead that he owed any duty to them with respect to the security of their property from damage.

■ The fact that as the fill washed out it "pulled the pipe with it" coupled with the finding of the trial court that no part of the failure of the water pipe resulted from the negligence or wrongful misconduct of the Marin Municipal Water District disposes of appellant's first contention. The situation presents a finding supported by substantial evidence. (*Raggio* v. *Mallory,* 10 Cal.2d 723, 725 [76 P.2d 660].)

■ The doctrine of absolute liability or liability without fault is predicated upon the theory that the actor realizing

the hazard of his undertaking nevertheless assumes the risk connected therewith and, notwithstanding he is free from all negligence or wrong and has used the utmost care, he nevertheless is liable for any invasion of the person or property rights of another. The rule is stated in *Luthringer* v. *Moore,* 31 Cal.2d 489, 498 [190 P.2d 1], in this language: "One who carries on an ultra-hazardous activity is liable to another whose person, land or chattels the actor should recognize as likely to be harmed by the unpreventable miscarriage of the activity for harm resulting thereto from that which makes the activity ultra-hazardous, although the *utmost care is exercised* to prevent the harm. . . ." (Italics added.)

The case before us was tried on the theory that the defendant, Paoli, did not use any care at all in the use of his property but intentionally, or at least with utter disregard, damaged the property of the Motzers. The complaint in effect so alleges, and the trial court on substantial evidence so found. Obviously the doctrine of absolute liability was not applied to the case at any stage of the proceedings.

The case is governed by the rules set forth in *Razzano* v. *Kent,* 78 Cal.App.2d 254 [177 P.2d 612] and *Perkins* v. *Blauth,* 163 Cal. 782 [127 P. 50]. In the Razzano case the court held it to be a trespass for an operator of an upper dredging operation to allow mud and silt to flow into the ditch and pond of a lower operator through the medium of surface rain water. In the Perkins case in the language of the court (p. 786) "The allegations of the complaint taken together amount to this: That the defendants cut a canal through the natural bank of the Sacramento River; after cutting the canal they failed to take proper precautions to prevent the waters of the river from flooding plaintiff's land; that the waters of the river did in fact flood plaintiff's land to his injury." The complaint was held to be a sufficient pleading of a trespass and to the objection that it was not pleaded that the cutting was done without plaintiff's consent, the court said: "But we are not advised of any rule of pleading which requires a declaration from plaintiff that an unlawful trespass was committed without his acquiescence. There is no presumption that a plaintiff consents to an unwarranted invasion of his personal rights or rights of property." And to the objection that negligence was not pleaded in terms, it said: "It is, of course, not necessary to aver in terms that an act was negligently done to

state a cause of action in tort.'' (Citing Cooley 2 Elements of Torts, p. 19.)

As the foregoing authorities indicate, the law defines the rights and duties existing between parties where there is a trespass such as is alleged here, and such rights and duties need not be alleged.

The judgment is affirmed.

Nourse, P. J., and Goodell, J., concurred.

A petition for a rehearing was denied April 26, 1952, and appellant's petition for a hearing by the Supreme Court was denied May 26, 1952.