[L. A. No. 22189. In Bank. Aug. 11, 1953.]

Estate of RUBY SARGAVAK, Deceased. H. KURKJIAN et al., Appellants, v. J. G. OHANNESON et al., Respondents.

Cameron & Perkins, William Kinley, Simpson & Wise and George E. Wise for Appellants.

C. W. Byrer, Charles E. Hobart, Robert M. Dulin, Spurgeon Avakian and Melvin E. Fink for Respondents.

CARTER, J.—This is an appeal from an order in proceedings to determine heirship in the estate of Ruby Sargavak, deceased, initiated by nephews and nieces, the only heirs of Mrs. Sargavak. J. G. Ohanneson and Samuel G. Mahdesian, the legatees in the codicil later mentioned, were declared by the order to be entitled to the entire estate under the codicil.

It appears that in 1945 Mrs. Sargavak made a witnessed will in which she named her heirs as legatees and Mahdesian as executor. That will was admitted to probate and a contest filed on the ground of mental incapacity. Following a verdict for contestants the probate court granted to proponents a judgment notwithstanding the verdict. That judgment was reversed on appeal (*Estate of Sargavak*, 95 Cal.App.2d 73 [212 P.2d 541]) and judgment entered on the verdict. The trial court then granted a motion for a new trial, and apparently that proceeding has not progressed beyond that stage.

Shortly after the 1945 will was offered for probate a holographic instrument, dated September 29, 1946, was offered for probate as a codicil to the 1945 will. It reads:

> "1566 W-29th St.
> Los Angeles 7, Cal.
> Sep 29, 1946
> Sunday Evening

"To Whom It May Concern:

"I the writer—Mrs. Ruby Sargavak wants everyone to know that she is writing these lines of her own free will—no one is putting her of or urging her to do it. She leaves everything she has to her Boy Sam Mahdesian & her *layer*, J. G.

Ohanneson—she gives them power of attorney to divide what is left of her belongings to them. She specifically advises to give nothing what so ever to Mrs. Lillian Shooshan—she is no relation nor friend of hers—Mrs. Sargavak has been more than kind to her, just because she begged us to help her for a little time—Mrs. Sargavak would rather help her very own nieces & grand nieces & perfect strangers, who are truly in need of help. God has been good to us, she did not appreciate the goodness of the Lord to her. All honor & glory unto his High and Holy Name! Mrs. Ruby Sargavak. P. S. It is 8 o'clock, I am very tired——

Ruby Sargavak.''

Its probate was contested by Mrs. Sargavak's heirs on the ground that she did not intend it as testamentary disposition of her property. Extrinsic evidence was received on that question and it was ordered admitted to probate. On appeal it was claimed that the evidence without contradiction showed no testamentary intent and also that extrinsic evidence was not admissible. The order was affirmed, this court stating that ''we are here concerned not with the meaning of the instrument (codicil), but with the intention with which it was executed.'' (*Estate of Sargavak,* 35 Cal.2d 93, 96 [216 P.2d 850, 21 A.L.R.2d 307].) We held that extrinsic evidence was admissible to show whether the testator intended the codicil to be effective.

In the instant heirship proceedings initiated by decedent's heirs the latter asserted that it was her intent by the codicil that the property go to Ohanneson and Mahdesian in trust for persons other than Mrs. Shooshan and that they have power of attorney to divide it between the other persons, but as the beneficiaries of the trust were uncertain (the claimed beneficiaries being decedent's nieces and nephews and strangers) the trust failed and the property would pass by intestate succession to the heirs. The court refused to permit the heirs to introduce any extrinsic evidence to show that the intent was that claimed by them and determined that Ohanneson and Mahdesian took the property absolutely, and that no trust was intended by the codicil.

The heirs, petitioners in the heirship proceedings, assert error, claiming that the codicil was ambiguous on its face and extrinsic evidence was admissible to show a trust. In this connection they contend that this court's decision in the former appeal (*Estate of Sargavak, supra,* 35 Cal.2d 93)

318

established that such evidence was admissible. The extrinsic evidence sought to be introduced by petitioners consisted of the circumstances surrounding the making of the will such as the size of the estate, the property involved and the circumstances and relations of the parties involved; and oral declarations of the testatrix such as were mentioned in *Estate of Sargavak, supra,* 35 Cal.2d 93, including her statement to Mahdesian in referring to the codicil—that she wanted Ohanneson, her attorney, and him, as her executor, to take care of her estate the way he knew she wanted it.

Referring to the last contention first (the effect of the decision in the former appeal on this case), it is clear that the decision on the former appeal has no bearing upon the present case. As above mentioned it was there expressly stated in the forepart of the opinion that the court was concerned only with the question of whether the codicil was intended as a testamentary document and *not* with the *meaning* of the instrument. Here we are concerned with the meaning—whether there was an intent to create a trust. It is true, as stated by Ohanneson and Mahdesian, that we there said, in discussing the evidence on the question of testamentary intent, that nothing indicated an intent that decedent did not leave the property to those persons, that there was evidence of such intent because of the close association between decedent and them and that the purpose to leave her property to them was expressed by the instrument. But that discussion was aimed solely at the question of whether she intended to make a will and not as to the meaning of the will—as to whether their interest should be absolute. The only thing before the court was whether the codicil was a will and no question of construction was involved. (See *Estate of Salmonski,* 38 Cal.2d 199 [238 P.2d 966].)

The statutes on the subject of the admissibility of extrinsic evidence in the construction of wills provide: "A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will." (Prob. Code, § 104.) "When there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the

oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations.'' (Prob. Code, § 105.) Recently this court has stated the rules of construction and on the admissibility of extrinsic evidence. ██ ██ To impose a trust upon property bequeathed it must appear that the testator intended to impose mandatory duties, and where an absolute estate has been devised by will, that estate will not be limited by subsequent words unless they indicate as clear an intention therefor as was shown by the words creating the estate (*Estate of Collias,* 37 Cal.2d 587 [233 P.2d 554]; *Estate of Kearns,* 36 Cal.2d 531 [225 P.2d 218]; Prob. Code, § 104, *supra*). ██ While declarations of the testator before and after the execution of the will are admissible for the purpose of ascertaining the intent with which the instrument was executed, they are not admissible ''for the purpose of proving the meaning the testator attributed to specific provisions of the admitted will. [Citations.] 'Such . . . declarations of intent to make a will are admissible when the attempt is not to explain an ambiguity but to show the testamentary character of a letter.' '' (*Estate of Sargavak, supra,* 35 Cal.2d 93, 97.) In *Estate of Kearns, supra,* 36 Cal.2d 531, the court was considering whether a clear dispositive clause of a will was modified by a later clause which seemed to indicate, by allegedly precatory words, the creation of a trust. We concluded that the later clause was not as clear as the dispositive clause and hence under section 104 of the Probate Code, *supra,* a trust was not created unless the intent of the testator to do so can be shown by extrinsic evidence and ''Section 104 must be read with section 105 of the Probate Code which provides that 'when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding . . . oral declarations' of the testator as to his intentions.'' (*Estate of Kearns, supra,* 36 Cal.2d 531, 537.) ██ As there was an ''uncertainty'' on the face of the will the trier of fact may consider such matters ''as the size of the estate, the property involved in the gift, the circumstances of the parties and their relation to each other and to the

320

testator.'' In other words, oral declarations of the testator are not admissible but circumstances may be shown where there is an uncertainty. Or as was said in *Estate of Salmonski, supra,* 38 Cal.2d 199, 214: ''When an uncertainty arises upon the face of a will as to the meaning of any of its provisions, the testator's intent is to be ascertained from the words of the will, but the circumstances of the execution thereof may be taken into consideration, excluding the oral declarations of the testator as to his intentions. . . . But 'where the intent is plain' from the words used, 'the duty of the court is to declare that intent, without regard to the consequences.' '' As in the Kearns case, the question here presented is whether the testatrix *intended to create a trust* rather than an ascertainment of who are the beneficiaries thereof if one was created, hence it is not a case of determining an ''imperfect description'' or where no ''person exactly answers the description'' as contemplated by the first clause of section 105 of the Probate Code, *supra.* The problem is whether a trust was intended at all for any beneficiaries, not who those beneficiaries might be after it has been determined that a trust was intended. Thus it is not a question of ascertaining the objects or property of the testator's bounty, and cases on that issue relied upon by petitioners are not applicable.

Decisive on the admissibility of extrinsic evidence is, therefore, the presence or absence of uncertainty in the codicil. That there is no uncertainty is plain considering the codicil and rules of construction applicable. The bequest to Mahdesian and Ohanneson, hereafter referred to as legatees, is positive and unequivocal. The testatrix declares that she ''leaves everything she has'' to her ''boy'' Mahdesian (he was not her son) and her lawyer Ohanneson. True, she goes on to state that she ''gives them power of attorney to divide what is left of her belongings to them,'' but the giving of the power of attorney does not indicate a trust as it is only an authorization to the legatees to divide the property between them, merely another way of saying that she leaves it to them with full power to take charge of it and divide it. It is clear that when she said she gave power of attorney to ''them'' the ''them'' referred to the legatees, and it clearly follows that the second ''them'' in the same clause also refers to the legatees. There is no relation between that ''them'' and the nieces and grandnieces and strangers later mentioned. She states that Mrs. Shooshan is to be given nothing, undoubtedly

fearing a possibility that the legatees might give her something, an eventuality which she wants to avoid because of her feeling toward Mrs. Shooshan. The references to nieces and grandnieces and "perfect" strangers is a further expression of her dislike for Mrs. Shooshan, it being stated that she would rather help them than Mrs. Shooshan, indicating that she did not even see fit to help such persons. When she refers to what is "left of her belongings" she plainly means what is left at the time she dies or after the creditors and expenses of administration have been paid.

It is urged that because Mahdesian was named executor in the 1945 will (none was named in the codicil) and that will stands as far as it appoints an executor, a presumption arises that the bequest to him was intended to be in trust. It is not known now whether the 1945 will will withstand the contest as a new trial has been granted and the outcome is not known as above mentioned. Aside from that, however, the law is not as claimed by petitioners. Even if Mahdesian was named as executor in the codicil it still appears that he is clearly made a legatee, and any power of attorney does not appear to be addressed to him as executor. ██ "Where the person directed to carry out the wishes of the testator is both executor and legatee, the courts in construing the effect of the language have refused to follow the strict rule which imposes a mandatory duty on the executor and have apparently treated the words as being addressed to him in his capacity as legatee." (*Estate of Kearns, supra*, 36 Cal.2d 531, 534; *Estate of Collias, supra*, 37 Cal.2d 587, 590.)

██ It may be noted that some of the extrinsic evidence to which reference is made in *Estate of Sargavak, supra*, 35 Cal.2d 93, might indicate that there was an oral agreement between the testatrix and Ohanneson and Mahdesian that they would hold the property received by them under the codicil for petitioners or some of them. Such an oral agreement could be proved by extrinsic evidence and a constructive trust would arise in favor of the beneficiaries, for "Where a testator devises or bequeaths property to a person in reliance upon his agreement to hold the property in trust, the devisee or legatee holds the property upon a constructive trust for the person for whom he agreed to hold it." (Rest., Trusts, § 55; see *Sears* v. *Rule*, 27 Cal.2d 131 [163 P.2d 443]; *Beck* v. *West Coast Life Ins. Co.*, 38 Cal.2d 643 [241 P.2d 544, 26

A.L.R.2d 979]; *Orella* v. *Johnson*, 38 Cal.2d 693 [242 P.2d 91]; 25 Cal.Jur. 177.) **[10]** The probate court is not, however, the appropriate forum in which to establish such a trust; it must be litigated in an independent proceeding in equity. (*Sears* v. *Rule, supra*, 27 Cal.2d 131; *Estate of Morelli*, 102 Cal.App.2d 39 [226 P.2d 716].) Hence, the question cannot be considered in the instant proceeding.

The order is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.