[No. A114703. First Dist., Div. Three. Dec. 13, 2007.]

TAMMY CABRAL, Plaintiff and Appellant, v.
MARY L. SOARES, Individually and as Executor, etc., et al., Defendants and Respondents.

**COUNSEL**

Stephen G. Opperwall for Plaintiff and Appellant.

Law Offices of Edward E. Martins, Valarie J. Follett and Edward E. Martins for Defendant and Respondent.

**OPINION**

**POLLAK, Acting P. J.**—Plaintiff Tammy Cabral appeals from an adverse judgment entered after the trial court sustained without leave to amend a demurrer addressed to her original complaint. Plaintiff alleges that her former husband James E. Cabral is substantially delinquent in payments of spousal and child support. To prevent her from enforcing these obligations plaintiff alleges that James and his sister Mary L. Soares induced their mother to change her will to leave to Mary the one-third of her estate that she had previously designated to go to James, with the understanding that Mary would subsequently "get that money to" him. The mother, Edwina Cabral, has now died and her estate includes real property with an estimated fair market value in excess of $500,000. We conclude that the trial court correctly sustained a general demurrer to the complaint which seeks to reach one-third of the value of the estate, but that it erred in refusing to grant leave to amend to correctly plead a cause of action under which plaintiff ultimately may be entitled to prevail.

### Background

Plaintiff's complaint alleges that as of November 2005 James was delinquent in paying court-ordered spousal and child support in the approximate amount of $134,000, and that since 1998 he has "on several occasions been found in contempt" for the failure to pay his support obligations. The complaint alleges that James has taken various steps to avoid enforcement of

the support obligations, including "not having a regular job with wages . . . and working in a way that he would be paid in a manner that prevented plaintiff from enforcing the support obligations." The complaint continues, "Until shortly before her death, the will of Edwina Cabral provided that her three children would each receive a one-third interest in her estate," which included the family home in Newark, California with a free and clear market value in excess of $500,000, so that James "would have received enough money to pay the past due support obligations in full." "Defendants Mary Soares and James E. Cabral realized that the one-third interest of James E. Cabral would end up getting used to pay the past due support owed to plaintiff. In order to prevent that from happening, those defendants conspired and agreed to have the will modified shortly before Edwina Cabral died. The modification was to have the one-third interest of James E. Cabral instead get paid to Mary Soares so that she would end up with a two thirds interest. . . . [¶] The intent of this arrangement . . . was that Mary Soares would take the one-third interest of James E. Cabral, that Mary Soares would then hold that money, and that Mary Soares would then later get that money to James E. Cabral in a manner to prevent plaintiff from receiving it for the past due support obligations."

The complaint further alleges that Edwina's will was so modified on May 10, 2005 (with a bequest to James of "the paltry sum of $1,000"), that Edwina died less than two months later, that the will was filed with the probate court in July 2005, and that Mary is the executor under the will.[1] Paragraph 22, the final introductory paragraph of the complaint, reads in full as follows: "The last minute change in the will of Edwina Cabral very shortly before her death was probably done at a time when Edwina Cabral was not aware of what she was doing, was not mentally competent, was subject to undue influence by Mary Soares and James E. Cabral, and was not the true expression of her intent since she had always previously expressed that she wanted to leave her estate to her three children in equal shares of one-third each. The change was therefore not really a knowing and intelligent change by Edwina Cabral, but was a manipulation by Mary Soares and James E. Cabral. Alternatively, if Edwina Cabral was aware of what was being done, then she also was doing it for the purpose of defrauding plaintiff and of manufacturing a charade to have the money go to James E. Cabral through Mary Soares in a way that was designed to keep plaintiff from being paid what the court ordered James E. Cabral to pay for support."

The complaint contains five causes of action, the first alleging that "[t]he last minute change to the will of Edwina Cabral" was a fraudulent transfer

---

[1] The complaint names as defendants Mary L. Soares, individually; Mary L. Soares, as the executor of the estate of Edwina M. Cabral; Mary L. Soares, as the trustee of the "Cabral Family Revocable Trust," James E. Cabral, and the third sibling, Joseph A. Cabral.

within the meaning of the Uniform Fraudulent Transfer Act (Civ. Code, § 3439 et seq.). The second cause of action alleges that the family home "should be held in a constructive trust for plaintiff's benefit up until and to the extent required to pay the past due support obligations in full" and the third cause of action alleges that the property "should be held in a resulting trust." The fourth cause of action seeks declaratory relief as to the rights and liabilities of the parties, "including the rights of plaintiff to be paid from the one-third interest that James E. Cabral has in the estate and the property. [¶] Plaintiff contends that she is entitled to enforce the support obligations against the property and other assets of the estate." The purported fifth cause of action is entitled "conspiracy" and alleges damages "in an amount that equals the amounts owed to her by defendant James E. Cabral, as well as attorneys' fees and costs incurred herein." The prayer seeks compensatory damages, "a judicial determination James E. Cabral have a one-third interest in the estate of Edwina Cabral and that plaintiff be allowed to execute against those assets to the extent needed to be paid in full for support obligations, both past, present, and future," and other relief.

The trial court sustained defendants' demurrer to this complaint without leave to amend, with the following explanation: "This court lacks jurisdiction of plaintiff's claims. Plaintiff's claim for declaratory relief seeks to contest the validity of the second will and must be brought in the probate court as a will contest. Code of Civil Procedure § 1060. Plaintiff's other claims are dependent upon her claim that the second will should be set aside. Plaintiff cites no authority allowing her to avoid the requirements for a will contest by phrasing her claims as tort claims. Cf. Harootenian v. Harootenian (1951) 38 Cal.2d 242, 248–250 [238 P.2d 992]."

Plaintiff moved for reconsideration of this order, arguing that the court had incorrectly accepted defendants' mischaracterization of her claim as arising out of a will, whereas the claim in fact is based upon an agreement between James and Mary to hinder and defraud creditors and thus supports a fraudulent conveyance cause of action. The court's tentative ruling was to grant the motion and to grant leave to amend the complaint "to state a claim, if possible, based on an alleged agreement between defendant James Cabral and any heir of Edwina M. Cabral to secretly transfer assets received from decedent's estate to defendant James Cabral." After argument, however, the court denied the motion for reconsideration on the ground that there were no new or different facts to support the application under Code of Civil Procedure section 1008, subdivision (a). The court acknowledged its authority to hear a motion for reconsideration on its own motion, but declined to do so with this explanation: "The court remains convinced that plaintiff cannot proceed directly against Mary Soares based on decedent's decision to exclude James Cabral from her will. And, the court is not persuaded that a viable claim can be made against Mary Soares and James Cabral based on an alleged

agreement between them unless and until James receives some distribution of assets, in which case the family court assignment order appears to provide an adequate remedy."

The assignment order to which the court referred is an order entered in the family law department in the proceedings giving rise to the support orders against James. The court assigned to plaintiff "until such time as the judgment herein is fully satisfied or this order is amended" "[a]ll rights to payment that [James] has from any third party" including "any right to payment that [James] may have now or in the future from Mary Soares or from Joseph Cabral or from any other source that relates to the will of Edwina Cabral, the estate of Edwina Cabral, and/or any assets or funds from the will and/or estate of Edwina Cabral."

Plaintiff has timely appealed from the subsequent judgment dismissing the action.[2]

## Discussion

*The trial court correctly sustained the demurrer insofar as plaintiff challenges the validity of Edwina's will or the administration of her estate.*

Plaintiff repeats on appeal her argument that the trial court mischaracterized her complaint as a will contest, asserting "this case is based on the agreement between James Cabral and Mary Soares," not "on the will of Edwina Cabral." In so arguing, plaintiff implicitly acknowledges that challenges to the validity of Edwina's will or to the administration of her estate must be brought in the probate proceedings. (Prob. Code, § 7050; *Howard v. Bennett* (1942) 53 Cal.App.2d 546 [127 P.2d 1012].) A dispute concerning the meaning or validity of the provisions of a will cannot be resolved by declaratory judgment. (Code Civ. Proc., § 1060 [declaratory relief action may be brought by "[a]ny person interested under a written instrument, excluding a will or a trust"]; *Howard v. Bennett, supra,* 53 Cal.App.2d 546.)

Despite plaintiff's protestations, her complaint is essentially directed to the validity of the will. Paragraph 22 makes alternative factual allegations, the first being that Edwina "probably" was not mentally competent when she modified her will and did so as the result of the undue influence of James and Mary. The complaint goes on to allege, among other things, that the assets of

---

[2] Plaintiff filed a notice of appeal on June 28, 2006, shortly after the court denied the motion for reconsideration, although judgment was not entered until October 27, 2006. We elect to treat the "notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment." (Cal. Rules of Court, rule 8.104(e)(2).)

the estate should be held in a constructive or resulting trust "for plaintiff's benefit," that a controversy exists "between the parties hereto about the property, the will, the estate, and the rights and liabilities of the parties, including the rights of plaintiff to be paid from the one-third interest that James E. Cabral has in the estate and the property," and the prayer seeks "a judicial determination," contrary to the terms of the will, that "James E. Cabral ha[s] a one-third interest in the estate of Edwina Cabral" against which plaintiff may execute. The claim that the amended will should be disregarded because executed as the result of undue influence can be maintained only in the probate proceedings. (*Reed v. Hayward* (1943) 23 Cal.2d 336, 339 [144 P.2d 561]; *Bohn v. Smith* (1967) 252 Cal.App.2d 678, 682 [60 Cal.Rptr. 757].)

To the extent that the complaint relies on the alternative allegation that Edwina knowingly participated in a scheme to defraud James's creditors by changing her will as she did, the complaint is equally defective. So interpreted, the complaint still seeks to effect a distribution of the estate in contravention of the terms of the amended will. Moreover, assuming the truth of the pleaded facts, there was no fraudulent conveyance as alleged in the first cause of action. While his mother still lived, James had no right to any of her property. His mother was under no obligation to leave any of it to him, and she was under no obligation to plaintiff. Thus, the home and other property that Edwina owned while she was living was not the "property of a debtor" within the meaning of Civil Code section 3439.01, subdivision (a), and Edwina's decision to leave none of it to James was not a fraudulent transfer within the meaning of Civil Code section 3439.04. Edwina was entitled to remove James as a devisee under her will if she did not wish to leave him property that plaintiff would be able to recover. She also had the right to increase her bequest to Mary. (See *Mehrtash v. Mehrtash* (2001) 93 Cal.App.4th 75 [112 Cal.Rptr.2d 802].)[3]

*The trial court erred in denying leave to amend to properly allege a constructive trust*

 Only rarely should a demurrer to an initial complaint be sustained without leave to amend. (*Adkins v. San Francisco* (1935) 8 Cal.App.2d 620, 621–622 [47 P.2d 751].) The denial of leave to amend is appropriate only when it conclusively appears that there is no possibility of alleging facts under which recovery can be obtained. "A demurrer should not be sustained without leave to amend if the complaint, liberally construed, can state a cause

---

[3] The situation is entirely different from that in *Estate of Myers* (2006) 139 Cal.App.4th 434 [42 Cal.Rptr.3d 753], a case cited during oral argument. That case involved a proper claim for fraudulent conveyance, where the decedent mother had been the debtor and had allegedly conveyed her property to her son-in-law in an attempt to defraud her creditors.

of action under any theory or if there is a reasonable possibility the defect can be cured by amendment." (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1037 [134 Cal.Rptr.2d 260].) Here, plaintiff may well be able to allege a right to impose a constructive trust on one-half of what Mary receives under Edwina's will, that is, upon the one-third of Edwina's estate received by Mary that allegedly was intended for James.

Plaintiff's potential right to recover under such a theory involves a two-step analysis. The first question is whether James is entitled to assert a constructive trust upon the one-third interest in the estate that Edwina allegedly intended for him that, under the terms of the amended will, goes to Mary. Although inartfully pleaded, the complaint appears to allege that Mary agreed that if Edwina changed her will to leave Mary the one-third beneficial interest then designated for James, Mary would hold the property for James and "later get that money" to him. What is significant in this allegation is not the fact stressed by plaintiff in the trial court and in her appellate briefs, that James and Mary allegedly were parties to such an agreement, but that Mary and Edwina so agreed and that Edwina allegedly changed her will in reliance on that agreement.

"[W]here A is induced to make a will in favor of B . . . by the oral promise of B to hold for C, the courts are nearly unanimous in England in decreeing that B must hold in trust for C, and the same is true as to the courts of the United States." (Bogert, Trusts and Trustees (2007) Constructive Trusts, § 499, fns. & italics omitted.) That unquestionably is the rule in California. "The general proposition is well settled that where a testator devises his property in reliance upon an agreement or understanding with the devisee that the latter will hold it in trust for, or convey it to, a third person, the devisee holds the property upon a constructive trust for the third person." (*Sears v. Rule* (1945) 27 Cal.2d 131, 139 [163 P.2d 443].)

In *Estate of Sargavak* (1953) 41 Cal.2d 314, 321 [259 P.2d 897], the court noted that certain extrinsic evidence "might indicate that there was an oral agreement between the testatrix and [two legatees under a codicil to the testatrix's will] that they would hold the property received by them under the codicil for petitioners or some of them. Such an oral agreement could be proved by extrinsic evidence and a constructive trust would arise in favor of the beneficiaries, for 'Where a testator devises or bequeaths property to a person in reliance upon his agreement to hold the property in trust, the devisee or legatee holds the property upon a constructive trust for the person for whom he agreed to hold it.' " As the court pointed out in *Sears v. Rule, supra,* 27 Cal.2d at pages 139–140, "The issues raised in such a situation are not within the jurisdiction of the probate court, and the will and the decree of

distribution remain effective to give legal title to the devisee or legatee named, but the constructive trust is enforced in a separate proceeding in equity without attack on the probate proceedings." (See also *Estate of Sargavak, supra,* 41 Cal.2d at p. 322; *Weinstein v. Moers* (1929) 207 Cal. 534, 541–542 [279 P. 444]; *Blair v. Mahon* (1951) 104 Cal.App.2d 44, 51 [230 P.2d 832].) Thus, the allegations in plaintiff's complaint suggest that Mary will receive one-third of Edwina's estate subject to a constructive trust for the benefit of James.

The second step in the analysis is to determine whether plaintiff is entitled to enforce James's right to impose such a constructive trust. Several procedures exist by which a judgment creditor such as plaintiff may enforce a judgment against intangible or contingent rights that a debtor such as James may have. (See Code Civ. Proc., §§ 708.180, 708.210, 708.510, 709.020; cf. *Evans v. Paye* (1995) 32 Cal.App.4th 265, 276–277 [37 Cal.Rptr.2d 915].) Section 708.510, subdivision (a) of the Code of Civil Procedure provides that except as otherwise provided by law, "upon application of the judgment creditor on noticed motion, the court may order the judgment debtor to assign to the judgment creditor . . . all or part of a right to payment due or to become due, whether or not the right is conditioned on future developments." As indicated above, in the family court proceedings the court has in fact entered an order assigning to plaintiff any right James may have to payment from Mary that "relates to" Edwina's will or estate. In refusing to reconsider its order denying plaintiff leave to amend her complaint, the trial court suggested that no claim could be made against Mary and James "based on an alleged agreement between them unless and until James receives some distribution of assets," in which case the trial court believed the assignment order would provide an adequate remedy. However, imposition of a constructive trust on a portion of the devise to Mary would not be based on an agreement between James and Mary but on an agreement between Mary and Edwina. More importantly, James may never—or at least, never within the foreseeable future—receive a distribution of assets from the estate (other than the "paltry" $1,000 bequest). If James declines to enforce a claim for imposition of a constructive trust, or if Mary disputes the validity of such a claim, plaintiff's rights will not be enforced despite the existence of the assignment order.

A so-called creditor's suit, authorized by Code of Civil Procedure section 708.210, is designed to address exactly such a situation. (*Evans v. Paye, supra,* 32 Cal.App.4th at pp. 276–277.) Section 708.210 provides, "If a third person has possession or control of property in which the judgment debtor has an interest or is indebted to the judgment debtor, the judgment creditor may bring an action against the third person to have the interest or debt applied to the satisfaction of the money judgment." The comment of the Law Revision Commission with respect to amendments made to these provisions in 1982

observes that "[i]t is anticipated . . . that less expensive and less cumbersome enforcement procedures will be used in the normal case." (Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc. (1998 ed.) preceding § 708.210, p. 578; see also 2 Debt Collection Practice in Cal. (Cont.Ed.Bar 2d ed. 2006) § 11.1, p. 745.) In many situations the assignment entered in family court would be sufficient to enforce a creditor's rights. However, a creditor's suit may be necessary if there is a dispute concerning ownership of the property held by the third party—in this instance a dispute concerning the right to impose a constructive trust on one-half the amounts distributed to Mary from Edwina's estate—or "where for some other reason the judgment creditor believes that the third person will not cooperate." (Cal. Law Revision Com. com., Deering's Ann. Code Civ. Proc., *supra*, preceding § 708.210, p. 578.) Given the allegations of the complaint in this case, it is entirely reasonable for plaintiff to anticipate that Mary may dispute the right to impose a constructive trust on any portion of the legacy from her mother, or may otherwise fail to cooperate in honoring the family court assignment. In all events, plaintiff's right to maintain a creditor's suit is not dependent on establishing that other, less onerous procedures provide an inadequate remedy.[4]

■ The record does not disclose whether there have as yet been any distributions in the probate proceedings. If Mary has already received a distribution from the estate but has not delivered any portion to James, plaintiff unquestionably is entitled to maintain a creditor's suit to enforce whatever right James has to one-half of those funds. Mary may deny that she agreed to hold any portion of the legacy for James, and the action will provide the means for resolving that critical issue. If funds have not yet been distributed from the estate, Mary will not yet have received any property potentially subject to a constructive trust. In that event there may be an appropriate basis for declaratory relief, not with respect to plaintiff's right to an interest in Edwina's estate, as the original complaint alleges, but with respect to plaintiff's right to enforce a constructive trust against a portion of the funds that Mary is entitled to receive from the estate. If plaintiff were to show a basis for anticipating action by Mary that might frustrate plaintiff's ability to enforce a constructive trust, injunctive relief might be appropriate. We do not anticipate what new or revised allegations plaintiff may make to her complaint, and we of course intimate no views as to whether plaintiff can prove whatever allegations she does make. We are satisfied, however, that

---

[4] Moreover, there is nothing in *Estate of Myers, supra,* 139 Cal.App.4th 434, cited by Mary's attorney during oral argument, that suggests the contrary. That case recognized the right of a creditor of a decedent under Probate Code section 850 to pursue the decedent's claim to property held in the name of another. The procedure authorized by Probate Code section 850 is comparable to a creditor's suit under Code of Civil Procedure section 708.210, and the decision provides support by analogy for the conclusion we reach here. (See *Estate of Myers, supra,* at pp. 440–442.)

plaintiff is entitled to amend her complaint to attempt to state a claim on which relief may be granted.

### Disposition

The judgment is reversed, and the matter is remanded to the trial court with directions to grant plaintiff leave to file an amended complaint. The parties are to bear their respective costs on appeal.[5]

Siggins, J., and Horner, J.,[*] concurred.

---

[5] Defendants' motion for sanctions is denied.

[*] Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.