Filed 10/4/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| AMY'S KITCHEN, INC.<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br><br>    Defendant and Respondent. | A163767<br><br>(Sonoma County<br>Super. Ct. No. SCV268104) |

Amy's Kitchen, Inc. (Amy's) sued Fireman's Fund Insurance Company (Fireman's) after the insurer denied Amy's claim for costs incurred to clean, disinfect, and test its facilities for the coronavirus that causes COVID-19. Amy's claim was made under a policy with both communicable disease coverage and loss avoidance and mitigation extensions. The trial court sustained without leave to amend Fireman's demurrer to Amy's initial complaint. We conclude that the trial court correctly sustained the demurrer, but for the wrong reason, and that it wrongly denied Amy's leave to amend.

**Factual and Procedural History[1]**

Amy's employs over 2,500 people to manufacture organic and vegetarian meals at facilities in California, Oregon, and Idaho and to oversee its operations from headquarters in Petaluma. It purchased a comprehensive

---

[1] Because the judgment of dismissal followed an order sustaining a demurrer, we accept as true all facts properly alleged in the complaint. (*Minton v. Dignity Health* (2019) 39 Cal.App.5th 1155, 1161.)

1

property insurance policy from Fireman's for a one-year period ending in July 2020. The policy includes coverage extensions for communicable disease and for loss avoidance and mitigation.

The communicable disease coverage extension states that Fireman's "will pay for direct physical loss or damage to Property Insured caused by or resulting from a covered communicable disease event at a location including the following necessary costs incurred to: [¶] . . . mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects [of] the communicable disease." The policy defines "communicable disease event" as one in which "a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location."[2] (Boldface omitted.) The loss avoidance or mitigation coverage extension states that Fireman's will pay "necessary expense you incur to protect, avoid, or significantly mitigate potential covered loss or damage that is actually and imminently threatening Property Insured." (Boldface omitted.)

The complaint alleges that Amy's incurred costs "to mitigate, contain, clean, disinfect, monitor, and test for the effects of" the coronavirus at insured locations, and to avoid or mitigate potential coronavirus-related losses threatening those locations. The costs were for the purchase of temperature-screening equipment to test for COVID, protective shields to prevent transmission on assembly lines, masks and goggles, cleaning supplies, and "hero pay."

The coronavirus was present at covered locations because "people with confirmed cases of COVID-19 were on Amy's premises," breathing the virus

_____

[2] The policy also defines "location" and "communicable disease," but it is undisputed on appeal that Amy's allegations satisfy those definitions.

into the air and touching surfaces. The virus allegedly caused "direct physical loss or damage" by altering the physical condition of the locations' air and surfaces in ways that made them unsafe, absent precautionary measures. As a result, Amy's incurred costs "to mitigate, contain, clean, disinfect, monitor and test for" the virus.

The complaint further alleges that Amy's was obliged to sanitize its facilities to comply with public health orders. "In response to COVID-19 outbreaks, including at and/or near Amy's facilities, public health authorities in each of the jurisdictions began issuing multiple civil orders requiring implementation of various [measures] to continue operating," and also began "ordering locations to be decontaminated or disinfected." Amy's complied.

The complaint alleges as an "example" that, "on March 31, 2020, the Health Officer of the County of Sonoma issued Order No. C19-05, which mandated various require[d safety measures] for all essential businesses[,] including Amy's." The complaint lists measures mandated by the order, including capacity limits, social distancing, signage, and availability of hand sanitizer. The pleading alleges that public health authorities issued similar orders in each jurisdiction in which Amy's has facilities, citing statewide orders and guidelines from Oregon and Idaho. As a result, Amy's "incurred necessary costs to mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and/or assess the effects of coronavirus and COVID-19." The complaint alleges that authorities issued the cited general orders "[i]n response to COVID-19 outbreaks, including at and/or near Amy's facilities."

Amy's submitted a claim to Fireman's, which the insurer denied in May 2020, stating there was no "direct physical damage to the covered property." Amy's informed Fireman's of "confirmed cases of COVID-19 on its premises"

and cited "civil authority orders . . . [that] set forth obligations to disinfect and decontaminate," but Fireman's refused to submit the dispute to mediation. Amy's filed suit in March 2021, asserting causes of action for breach of contract, declaratory relief, and bad faith.

Fireman's demurred. The court issued a tentative ruling "invit[ing] argument on coverage under the communicable disease provision." Noting that Amy's "has not alleged that any public health authority issued an order specifically evacuating [its] premises in order to decontaminate or disinfect a known outbreak," but that "shutdown orders resulted in [Amy's] locations being closed and then modified to address the virus," the tentative ruling asked, "Is a general community-wide order under these circumstances sufficient to amount to a communicable disease event [as defined by the policy]?" The court also asked the parties to address whether Amy's had adequately alleged "direct physical loss or damage to the property" by alleging that it incurred costs "to mitigate, clean, disinfect, and monitor the effects of the virus."

At the hearing, Amy's appeared through its general counsel, who stated that he was "responsible for interacting with the counties [about] COVID and keeping our 2,500 employees safe." While insisting that "we have alleged specific orders as to Amy's [from] appropriate agencies that resulted in us doing the decontamination, the cleaning and other such work," he added, "we're happy, if necessary, to go into further detail to amend the complaint." Representing that he had "had specific calls with the county" and has "correspondence and communications where in response to our location, they directed us to clean, disinfect and do other such steps," he offered "to amend and include further information on that point."

4

After the hearing, the court issued an order sustaining the demurrer without leave to amend, asserting that Amy's had failed to allege "direct physical loss or damage to Property Insured" as required by the communicable disease extension. The court held it did not need to decide if Amy's had adequately alleged a "communicable disease event" and that the claim under the loss avoidance or mitigation extension also failed. The court reasoned that any potential loss or damage Amy's had incurred costs to avoid could not be a "potential covered loss or damage" because no potential COVID-related harm could amount to "direct physical loss or damage."

The court denied leave to amend, noting that Amy's had not "presented any specific facts it could allege to cure the defects addressed above." Following the entry of a judgment of dismissal, Amy's timely filed a notice of appeal.

## Discussion

We review de novo an order sustaining a demurrer, assessing whether the complaint states a cause of action. (*Minton v. Dignity Health*, *supra*, 39 Cal.App.5th at p. 1161.) We accept all properly pleaded material facts, but not contentions, deductions, or conclusions of fact or law. (*Ibid.*) "We affirm if any ground offered in support of the demurrer was well taken but find error if the plaintiff has stated a cause of action under any possible legal theory. [Citation.] We are not bound by the trial court's stated reasons . . . ; we review the ruling, not its rationale." (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.) If, as here, the trial court sustained the demurrer without leave to amend, we decide if there is a reasonable possibility that amendment could cure the defect. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

5

In *Inns-by-the-Sea v. California Mutual Ins. Co.* (2021) 71 Cal.App.5th 688 (*Inns*), a recent case involving COVID-related insurance claims, the Fourth Appellate District summarized several relevant principles: " 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' [Citation.] '. . . "Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions." ' [Citation.] ' "Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage' [citation], controls judicial interpretation. [Citation.]" ' [Citation.] ' " 'If contractual language is clear and explicit, it governs.' " ' [Citation.] [¶] ' "If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect ' "the objectively reasonable expectations of the insured." ' " ' [Citation.] This rule stems from the principle that ' "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." ' [Citation.] . . . '[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. . . . Courts will not strain to create an ambiguity where none exists.' " (*Id.* at pp. 697–698.)

1. *Amy's claimed loss is not excluded from coverage by the necessity for "direct physical loss or damage" within the meaning of the policy.*

The trial court held that the phrase "direct physical loss or damage," as used in the communicable disease extension, must be construed as it has been in other contexts to require a " 'distinct, demonstrable, physical alteration of the property' or a 'physical change in the condition of the property' " (quoting

6

*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co.* (2010) 187 Cal.App.4th 776, 779–780). By focusing on that single phrase, and on how it has been construed in different policy provisions, the court erred.

The paragraph at issue states in full: "(1) We will pay for direct physical loss or damage to **Property Insured** caused by or resulting from a covered **communicable disease event** at a location including the following necessary costs incurred to: [¶] (a) Tear out and replace any part of the **Property Insured** in order to gain access to the **communicable disease**; [¶] (b) Repair or rebuild **Property Insured** which has been damaged or destroyed by the **communicable disease**; or [¶] (c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects [of] the **communicable disease**." [3]

Although the "Definitions" section of the policy defines over 80 terms, it does not define "direct physical loss or damage" or any of its component terms. Nor does the operative paragraph define that phrase. Rather, the paragraph specifies three categories of costs that, if incurred as a result of a covered communicable disease event, are covered. The extension states in relevant part that "direct physical loss or damage . . . includ[es] . . . necessary costs incurred to [¶] . . . [¶] (c) [m]itigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects [of] the communicable disease." (Boldface omitted)

Notwithstanding that plain language, Fireman's contends that "direct physical loss or damage" does *not* include "necessary costs incurred to . . . [m]itigate, . . . clean, . . . disinfect, . . . test for, [etc.] the communicable

---

[3] A second paragraph of the extension, which is not at issue here, covers loss of business income and extra expenses caused by a suspension of operations triggered by a communicable disease event. (See fn. 7, *post*.)

disease" unless the communicable disease event physically altered the property. "[P]hysical alteration" appears nowhere in the text of the policy. Fireman's derives the necessity for such from cases construing the phrase "direct physical loss or damage" as used in very different policy provisions. Most of its cited cases involve business-income, extra-expense, and/or civil-authority provisions covering lost income. (*Inns*, *supra*, 71 Cal.App.5th at pp. 695–696 [business-income and civil-authority clauses in COVID case; no communicable-disease extension]; *Mudpie, Inc. v. Travelers Cas. Ins. Co.* (N.D. Cal. 2020) 487 F.Supp.3d 834, 839 [same], affd., (9th Cir. 2021) 15 F.4th 885; *10e v. Travelers Indem. Co.* (C.D. Cal. 2020) 483 F.Supp.3d 828, 836–837 [same]; *Travelers Cas. Ins. Co. of America v. Geragos & Geragos* (C.D. Cal. 2020) 495 F.Supp.3d 848, 853 [same]; see also *MRI Healthcare Center of Glendale, Inc. v. State Farm Gen. Ins. Co.*, *supra*, 187 Cal.App.4th at pp. 778–780 [construing business-personal-property and loss-of-income clauses in pre-COVID case not involving communicable disease].) Indeed, Fireman's cites a phalanx of decisions involving jurisdiction-wide COVID-related closure orders and not involving either communicable-disease extensions or location-specific orders to clean, disinfect, or test for the coronavirus.[4]

---

[4]*Musso & Frank Grill Co., Inc. v. Mitsui Sumitomo Ins. USA Inc.* (2022) 77 Cal.App.5th 753 [Calif. law; no communicable-disease extension or location-specific order]; *United Talent Agency v. Vigilant Ins. Co.* (2022) 77 Cal.App.5th 821 [same]; *Rialto Pockets, Inc. v. Beazly Underwriting, Ltd.* (9th Cir. Apr. 20, 2022, No. 21-55196) 2022 U.S. App. Lexis 10699 [same]; *Barbizon Sch. of San Francisco, Inc. v. Sentinel Ins. Co.* (N.D. Cal. 2021) 530 F.Supp.3d 879 [similar; virus exclusion with limited virus coverage, which court did not address]; *O'Brien Sales & Mktg., Inc. v. Transp. Ins. Co.* (N.D. Cal. 2021) 512 F.Supp.3d 1019, 1024 [Calif. law; no communicable-disease extension]; *Mortar & Pestle Corp. v. Atain Specialty Ins. Co.* (N.D. Cal. 2020) 508 F.Supp.3d 575, 581 [same]; see also *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.* (7th Cir. 2021) 20 F.4th 327, 335 [non-Calif. law; no communicable-disease extension or location-specific order]; *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.* (11th Cir. Aug. 31, 2021, No. 21-

None of these decisions focus on the reasonable interpretation of a communicable disease extension in which coverage is triggered by a communicable disease event causing costs to be incurred to "(c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects [of] the communicable disease." (Boldface omitted) Indeed in *Inns*, on which Fireman's heavily relies, the court specified that "[t]his litigation does not involve a scenario in which a business has alleged it was the target of an order requiring its particular premises to close for a period of time due to the demonstrated presence of a person infected with the COVID-19 virus," such as an order "to undertake disinfection procedures or to allow time for the virus to dissipate." (*Inns*, *supra*, 71 Cal.App.5th at p. 699, fn. 12.)

---

11046) 2021 U.S. App. Lexis 26196 [same]; *Oral Surgeons, P.C. v. Cincinnati Ins. Co.* (8th Cir. 2021) 2 F.4th 1141, 1144 [same]; *Uncork & Create LLC v. Cincinnati Ins. Co.* (S.D. W.Va. 2020) 498 F.Supp.3d 878, 884 [same].)

Fireman's cites one unpublished "summary order" affirming the dismissal of a suit based on a policy that included the same communicable disease extension at issue here. (*Abbey Hotel Acquisition, LLC v. National Surety Corp.* (2d Cir., May 27, 2022, No. 21-2609) 2022 U.S. App. Lexis 14646.) But in that case the insured made a claim under a different paragraph of the extension not raised here (cf. fn. 3, *ante*), to recover lost income due to a jurisdiction-wide closure order. (*Abbey Hotel,* p. *6.) Fireman's also cites one order construing a different communicable-disease provision worded very differently from the one at issue here. (*Spirit Realty Capital, Inc. v. Westport Ins. Corp.* (S.D.N.Y. Oct 21, 2021, No. 21-CV-2261 (JMF)) 2021 U.S. Dist. Lexis 204343.)

In *Marina Pacific Hotel & Suites v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, the Second Appellate District addressed a dispute involving claims for COVID-related costs under a Fireman's policy with an identical communicable disease extension. (*Id.* at p. 100.) However, the parties did not focus on that provision in their arguments on appeal, and the court did not construe it. (*Id.* at p. 106, fn. 6.)

An insurance policy must be construed in light of how a reasonable layperson would read its language, not how insurance-coverage lawyers might understand terms of art defined not by the policy but by caselaw. (See, e.g., *E.M.M.I., Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 471.) On reading the phrase "direct physical loss or damage" as it appears in the extension, a reasonable layperson would assume that the phrase includes costs incurred for each of the three purposes specified in subparagraphs (a), (b), and (c). Fireman's contrary view that a layperson would instead recognize that he or she must look outside the extension to learn the meaning of that phrase is especially implausible given that Fireman's printed the phrase in unobtrusive plain text within a sentence that uses boldface to alert the reader that three *other* phrases—"Property Insured," "communicable disease event," and "communicable disease"— have specially defined meanings.

Moreover, treating physical alteration as an additional condition of coverage, as Fireman's urges, would render subparagraph (c) illusory—both redundant and meaningless. Subparagraphs (a) and (b) address the situation in which the presence of a communicable disease leads to physical alteration of the insured's property, where property must be torn out, repaired, or replaced. If subparagraph (c) were construed to apply only if there is a physical alteration of the property, the provision would have no possible application not covered by subparagraphs (a) and (b).[5] As asserted in a case

_____

[5] Fireman's identifies only one hypothetical situation in which the communicable disease extension could provide coverage when the policy's general insuring clause would not—namely, if a communicable disease event caused a public health authority to issue an order requiring an insured to damage or destroy its own property to eliminate a source of disease, in which case the general insuring clause would not apply because the damage was intentionally inflicted. However, in that case, coverage would be provided under subparagraphs (a) or (b).

cited by Fireman's, " 'the presence of the virus itself . . . [does] not constitute direct physical loss of or damage to property' " as "contaminated surfaces can be disinfected and cleaned." (*O'Brien Sales & Mktg., Inc. v. Transportation Ins. Co., supra*, 512 F.Supp.3d at p. 1024.) If that view is correct, the only possible explanation for including subparagraph (c) would be to expand the coverage to include the cost of mitigation and disinfection, which otherwise would not be covered.[6]

Thus, the only plausible interpretation of subparagraph (c) of the communicable disease extension in this policy is that the need to clean or disinfect infected or potentially infected covered property constitutes "direct physical loss or damage" of that property within the meaning of the policy. The trial court erred in holding otherwise. The trial court also incorrectly rejected Amy's claim under the loss avoidance or mitigation coverage extension on the same basis, that the coronavirus cannot cause "direct physical loss or damage." As just explained, neither policy extension is inapplicable to Amy's claim for the reason given by the court below.

---

[6] At oral argument, Fireman's Fund contended that the communicable disease exception provides coverage for the costs set forth in subparagraph (c) only if there is coverage for the costs specified in subparagraphs (a) and (b), "in addition" or "ancillary" to coverage under one of those subparagraphs. That is not what the policy says. It does not treat any of the three categories of costs set forth in subparagraphs (a), (b), and (c) differently from one another or state that the costs identified in (c) are recoverable only if there is loss or damage involving physical alteration recoverable under subparagraphs (a) or (b). The extension describes "direct physical loss or damage" as including without distinction the costs identified in subparagraphs (a), (b), and (c).

2. *Amy's has not pled a "communicable disease event" but should be given leave to amend to do so.*

The communicable disease extension provides coverage only if the direct physical loss or damage was caused by or resulted from a "communicable disease event." (Boldface omitted.) The policy defines this term as "an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location." (Boldface omitted.) On appeal, Fireman's argues that Amy's failed to allege facts constituting such an event because it did not allege that a public health authority ordered that its premises be decontaminated or disinfected "due to the outbreak of a communicable disease" at its particular premises. The complaint alleges only that authorities issued jurisdiction-wide orders or "guidance" triggered by general conditions in areas encompassing Amy's locations. According to the complaint, "In response to COVID-19 outbreaks, including at and/or near Amy's facilities, public health authorities in each of the jurisdictions began issuing multiple civil orders requiring implementation of [safety measures] to continue operating," and "ordering location**s** to be decontaminated or disinfected." (Emphasis added.)

Fireman's cites several decisions interpreting identical or similar extensions to require an order specific to, and triggered by an outbreak at, a covered location. (*Paradigm Care & Enrichment Ctr., LLC v. West Bend Mut. Ins. Co.* (7th Cir. 2022) 33 F.4th 417, 422–423 [construing similar provision]; *Dakota Girls, LLC v. Philadelphia Indemnity Ins. Co.* (6th Cir. 2021) 17 F.4th 645, 650–652 [same]; *PS Bus. Mgmt. v. Fireman's Fund Ins. Co.* (E.D. La., Oct. 27, 2021, Civ. A. No. 21-1229 Section "F") 2021 U.S. Dist. Lexis 207063, at p. *8 [construing identical provision]; *Nguyen v. Travelers Cas. Ins. Co. of America* (W.D. Wash. 2021) 541 F.Supp.3d 1200, 1237 [same].) Because the

extension in this case also applies only if a public health authority has ordered decontamination "due to the outbreak of a communicable disease *at such location*" (italics added), we agree that the present pleading does not adequately allege a basis for coverage. Thus, Fireman's demurrer was properly sustained on this ground.

However, the trial court denied leave to amend based not on the failure to allege a location-specific order, but solely on the incorrectly perceived inability to allege "direct physical loss or damage." The court never considered whether Amy's could amend to properly allege a "communicable disease event."[7]

As described above, Amy's general counsel argued to the trial court that while he believed the allegations of the complaint were sufficient, he could "go into further detail to amend the complaint." He represented that he had "had specific calls with the county" and that "there's correspondence and communications where in response to our location, [authorities] directed us to clean, disinfect and do other such steps."

The burden of showing a reasonable possibility that amendment can cure the defect in a complaint rests "squarely on the plaintiff," who must "identify specific facts showing [that] the complaint can be amended to state a viable cause of action." (*Minnick v. Automotive Creations, Inc.* (2017) 13 Cal.App.5th 1000, 1004.) But a court should deny leave to amend an initial complaint "only rarely," when it appears "conclusively" that it is impossible to allege such facts. (*Cabral v. Soares* (2007) 157 Cal.App.4th 1234,

---

[7] Normally, we review a denial of leave to amend for abuse of discretion. (*Minton v. Dignity Health*, *supra*, 39 Cal.App.5th at pp. 1161–1162.) But in this case, the trial court never exercised its discretion to consider whether Amy's could, if given leave, allege facts that would remedy the true defect in its complaint. We necessarily address that issue on a blank slate.

1240.) Whether Amy's can allege a sufficient location-specific order remains to be seen, but given counsel's representations, it cannot be conclusively determined at this point that Amy's cannot do so. It was error to deny it leave to amend.

## Disposition

The judgment of dismissal is reversed and the matter is remanded with directions to issue an order sustaining Fireman's demurrer with leave to amend, and for further proceedings consistent with this opinion.

POLLAK, P. J.

WE CONCUR:

STREETER, J.
GOLDMAN, J.

| | |
|---|---|
| Trial Court: | Sonoma County Superior Court |
| Trial Judge: | Honorable Jennifer V. Dollard |
| Counsel for Plaintiff and Appellant Amy's Kitchen, Inc.: | Michael L. Resch<br>Steven E. Rich<br>Ashley Park<br><br>LOWENSTEIN SANDLER LLP<br>Andrew M. Reidy (Pro Hac Vice)<br>Andrew Bisbas<br><br>COVINGTON & BURLING LLP<br>Rani Gupta<br>David B. Goodwin<br>Sabrina T. McGraw<br>for United Policyholders as Amicus Curiae on behalf of Plaintiff and Appellant. |
| Counsel for Defendant and Respondent Fireman's Fund Insurance Company: | DLA PIPER LLP<br>John P. Phillips<br>Brett Solberg (Pro Hac Vice) |