Filed 4/19/13  Betchart v. Betchart CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANTHONY BETCHART et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> WALDTRAUT BETCHART, <br><br> Defendant and Respondent. | A130834, A134063 <br><br> (Alameda County <br> Super. Ct. No. FG09-463053) |

Anthony Betchart (Tony), Ludgwig Betchart, Inc. (LBI), Elizabeth Enterprises, Inc. (Elizabeth), and CENA, LLC (CENA) filed a complaint for declaratory relief pursuant to Code of Civil Procedure section 1060[1] and for injunctive relief against Waldtraut Betchart (Wally), Tony's mother.  This declaratory action sought to enforce alleged oral agreements between Wally, her husband, and Tony, and to prevent the enforcement of provisions in a trust executed by Wally and her husband.  Wally, in her capacity as the trustee, filed a cross-complaint against Tony to partition properties that were used by LBI, the family business.

The trial court granted Wally's nonsuit against the complaint for declaratory and injunctive relief, and Tony appealed.  Subsequently, the trial court granted summary judgment in favor of Wally on her cross-complaint for partition, and Tony appealed.  At Tony's request, we consolidated the appeals.

---

[1]  All further unspecified code sections refer to the Code of Civil Procedure.

1

We affirm the nonsuit order as declaratory relief under a trust is not permitted under section 1060 and Tony's pleading requires the court to interpret and assess the validity of a trust. We also affirm the interlocutory judgment for partition. Wally provided undisputed evidence that she was entitled to partition. (See §§ 872.710 & 872.720, subd. (a).)

## BACKGROUND

Ludwig G. Betchart (Ludwig) and Wally, husband and wife, had six children together: Rosemary Smith, Karola Betchart, Mary Platten, Ludwig K. Betchart (Champ), Herman Betchart (Herman), and Tony. Tony is a shareholder, director, and officer of LBI and Elizabeth. He is also the managing member of CENA. All of the companies involve the rental of heavy construction and related equipment and machinery, and demolition services.

Ludwig and Wally founded LBI, a demolition and heavy equipment rental company, in the 1960s. Since 1978, LBI has conducted its operation on two adjacent parcels of land in Fremont, 42270 Osgood Road and 42088 Osgood Road (collectively, the two Osgood properties). The land at 42088 Osgood is continuous to 42270 Osgood, but there is no vehicular access to public streets on 42088 Osgood except over the parcel located at 42270 Osgood. Ludwig operated the company, maintained its equipment, and oversaw the demolition jobs, while Wally was in charge of the office and kept the books.

As the three sons graduated from high school, each became involved in the family business. Ludwig and Wally promised the boys that they would inherit the business and the land on which it was operating if they remained active in the business. Tony, the youngest son, began working in the business in 1987, and about one year later, in 1988, Herman left LBI. Champ and Tony continued to work in the family business in the 1990s.

Wally wanted to have a trust created and in order to get Ludwig to sign the trust, Wally "agreed that whoever worked for the business would get the business and these two parcels of land . . . ." Attorney Barbara Beck prepared for Ludwig and Wally a trust

2

in 1992, named the Ludwig Betchart and Waldtraut Betchart 1992 Declaration of Trust (the original trust).

The original trust named Wally and Ludwig as the co-trustees and provided that the co-trustee would remain as the sole trustee if either Wally or Ludwig died. The original trust also stated that the trust could "be revoked in whole or in part with respect to community property by an instrument in writing signed by either Trustor . . . ."

Upon the death of the first trustor, the trust estate, according to the original trust, was to be divided into three separate trusts "designated the 'Survivor's Trust,' the 'Marital Trust' and the 'Bypass Trust.' " The survivor's trust was the surviving spouse's interest in the trustors' community estate. The bypass trust was "the balance of the Trust Estate representing the balance of the Deceased Spouse's interest in the Trustors' community property, the Deceased Spouse's quasi-community property and the Deceased Spouse's separate property . . . ." Paragraph 5.5 provided: "On the death of the Deceased Spouse, the Surviving Spouse shall have the power to amend, revoke, or terminate the Survivor's Trust, but the Marital Trust and the Bypass Trust may not be amended, revoked, or terminated." The original trust contained a no-contest clause at paragraph 9.22.

Paragraph 7.3, under the heading, "Death of the Surviving Spouse," stated, in pertinent part: "Upon the death of the Surviving Spouse, the Trustee shall distribute the balance of the Bypass Trust and any portions of the Survivor's Trust and Marital Trust not disposed of as follows." Under subdivision C in paragraph 7.3, the instrument specified: "The Trustee shall distribute [LBI] in equal shares" to Champ and Tony. "Each of them must be active in [LBI] to receive his share." Under 7.3B, the original trust stated that a third property on 41655 Osgood Road, would pass to the three daughters and to Herman.

Paragraph 8.15, under the heading of "Trustee's Powers," read: "The Trustee shall have the power to partition, allot and distribute the Trust Estate, on any division or partial or final distribution of the Trust Estate, in undivided interests or in kind, or partly in money and partly in kind, at valuations determined by the Trustee, and to sell such

3

property as the Trustee may deem necessary to make division or distribution. In making any division or partial or final distribution of the Trust Estate, the Trustee shall be under no obligation to make a pro rata division, or to distribute the same assets to beneficiaries similarly situated, as long as the respective assets allocated to separate Trusts or shares, or distributed to such beneficiaries, have equivalent or proportionate fair market value."

After creating the original trust, Wally did not discuss with Ludwig dividing the two Osgood properties equally among the six children. On December 31, 1997, Ludwig and Wally executed and recorded a grant deed that transferred a 2.77 percent undivided interest in 42088 Osgood Road (42088 Osgood or the Property) to Tony. A few years later, on December 28, 2000, they executed a grant deed transferring to Tony an undivided interest in the Property of three percent.

In 1997 or 1998, Wally wished to amend the original trust because Champ was no longer working for LBI, and would, therefore, no longer receive a portion of any of the three Osgood Road properties under the terms of the trust. Wally testified that people had told her over the years that the land they owned should be divided equally among all six children, and she wanted to change the original trust to have the three Osgood properties divided evenly among her six children.

In 2002, Ludwig was diagnosed with cancer and stopped working. On May 21, 2003, Ludwig and Wally revoked and amended the original trust and executed the Ludwig Betchart and Waldtraut Betchart Amended and Restated Declaration of Trust dated December 21, 1992 (the amended trust). Attorney Beck also prepared the amended trust. Both Ludwig and Wally signed the amended trust at the bank. Above their signatures, the amended trust stated that Ludwig and Wally had read the document and approved of it.

The amended trust specified that after the death of the first spouse, the trust estate was to be divided into the survivor's trust and the bypass trust, rather than into three trusts. Under the heading of "Death of the Surviving Spouse," paragraph 7.4B provided that the trust estate was to be distributed as follows: the three Osgood Road properties were to be distributed equally among the issue of Ludwig and Wally, by right of

4

representation, and the owner of LBI was to have the right to rent the properties for a reasonable rent as long as he wished. Paragraph 7.4C stated that LBI was to be distributed to Tony. Paragraphs 7.2 and 7.3 provided the surviving spouse with the general power of appointment over the assets of the survivor's trust and a limited power of appointment over the assets of the bypass trust. Under the heading, "Trustee's Powers," the surviving trustee maintained broad discretion to allocate assets to the two subtrusts after the death of the first spouse, including the power to make non pro rata allocations of the trust assets to the two subtrusts. In paragraph 8.5, the trustee was given the power to, among other things, partition and divide the property.

A few months later, on July 7, 2003, Ludwig died. Beck served a notification under Probate Code section 16061.7 (the trustee's notification), and a copy of the amended trust on all beneficiaries of the trust, including Tony.

In 2004, Wally decided that she wanted to be less active in LBI because she was 74 years old at that time. In the spring of 2005, Tony and Wally went to see Glen Moss, the attorney for LBI. They also met with Roger Marlin, a Certified Public Accountant (CPA). Wally wanted to make sure that Tony was able to continue running LBI without interference from other family members. She wanted to give Tony control of the business and Marlin advised against that. He suggested that she retain at least 50 percent control and give Tony 40 percent. He originally drafted an agreement reflecting this distribution, but Wally later told him that she wanted Tony to have a controlling interest in the business. He stated that at some point Wally came to him crying and said that she felt that she had to "make things right with Tony, via the business and the property." She said that she wanted to be fair to the other children and she was conflicted. He said that she told him that "she had done something that her husband didn't want her to do. And she made some changes into the trust." He testified that he did not know exactly what those changes were. She mentioned the Osgood properties. She told him that she wanted to make sure that Tony received the business and "at least the piece of property in which the business was sitting on."

Tony stated that he continued to work at LBI in reliance of the terms in the original trust and oral promises to him. After Ludwig's death, Wally told Tony that Ludwig never intended to change the original trust. Tony declared that Wally admitted to him that she misled Ludwig into signing the amended trust when he was terminally ill. She told Ludwig, according to Tony, that the documents were merely an " 'update.' "

In September of 2005, Tony and his wife agreed to Wally's request to enter into a series of transactions suggested by Wally's advisors. The advisors warned that there would be adverse tax ramifications to the estate if the business were transferred outright to Tony. Tony undertook the following transactions: a written stock purchase agreement, whereby Tony purchased Ludwig's shares in LBI; a contract of sale, wherein Tony's nominee (CENA) purchased certain depreciated equipment from LBI; a personal property lease, where Wally personally leased six pieces of equipment to Elizabeth; and an equipment lease, under which Elizabeth leased from LBI certain equipment for subrental to customers. Tony personally guaranteed most of these transactions. Tony was the president and a 51 percent shareholder of LBI. Wally retained a 46 percent ownership interest, and another son held a 3 percent ownership interest in LBI.

On January 22, 2008, Tony retained counsel and his attorney filed on his behalf a petition to preserve testimony in the superior court. Tony sought to compel Wally to submit to a deposition to preserve testimony regarding the execution of the amended trust. The request was denied.

On October 10, 2008, Wally filed an action seeking to dissolve LBI. Subsequently, in April of 2009, she initiated an unlawful detainer proceeding to evict LBI from the two Osgood properties. The court dismissed this case after entering an order quashing services.

On July 15, 2009, Tony, LBI, Elizabeth, and CENA[2] filed the complaint against Wally, individually. The complaint contained causes of action for declaratory relief and for injunctive relief to prevent Wally from evicting him from the two Osgood properties.

---

[2] Although the complaint was filed on behalf of Tony, LBI, Elizabeth, and CENA, for ease we simply refer to Tony as the party seeking declaratory relief.

6

The pleading stated that "[t]he purpose of this action is to enforce a contract and obligation of trust arising out of the performance of plaintiffs' obligations for maintenance and operation of a family business at family-owned real property situated in Fremont, Alameda County, California, as well as subsequent related transactions intended to further and perpetuate such intent. Plaintiffs relied upon that contract and obligation of trust and have fully performed their end of the bargain, and seek to continue performing. Despite such performance, defendants, who participated in and benefitted from this family business, now seek to renege upon the contract and trust obligation, as well as the subsequent related transactions; seek to evict plaintiffs from the real property at which the family business has been operated since approximately 1977-78; and seek to utterly destroy the family business. This action seeks to prevent that inequitable and unjust result." Tony alleged that he relied on paragraph 7.3C in the original trust.

Wally answered the complaint on August 14, 2009, and, as trustee of the survivor's trust and bypass trust, she filed a cross-complaint against Tony to partition 42088 Osgood. Tony answered the cross-complaint on September 24, 2009.

On September 1, 2009, Tony filed an application for a temporary restraining order and an order to show cause or, alternatively, a request for a preliminary injunction. The trial court denied the application for a temporary restraining order but granted the order to show cause regarding a preliminary injunction. On October 8, 2011, the court denied the motion for a preliminary injunction.[3]

The declaratory relief action came on for a nonjury trial on October 15, 2010. Both parties filed motions in limine that were denied without prejudice. Counsel for Tony asserted in his opening statement that Tony was entitled to inherit LBI and the two Osgood properties because there had been a promise in the original trust. He argued that the amendment was procured by fraud and undue influence over a person incapable of protecting his own interest. Following the opening statements, Wally's counsel made an

_____

[3] There are numerous other matters that have been decided or are still pending in the superior court or this court involving these parties.

oral motion for nonsuit. The court adjourned for the day and continued the matter to October 18, 2010. Tony filed written opposition to Wally's motion for nonsuit.

On October 18, 2010, the trial court heard testimony of CPA Marlin out of order, and heard arguments regarding Wally's nonsuit motion. The matter was then submitted to the court for decision on the nonsuit motion. On October 21, 2010, the court considered supplemental briefing by Tony. The court listened to additional argument by counsel.

On October 28, 2010, the trial court issued its tentative decision granting Wally's nonsuit motion. On October 29, 2010, the court heard oral argument on the tentative ruling. After hearing oral argument, the court adopted its tentative ruling.

Tony filed a request to reopen and to make an offer of proof; he also requested leave to amend the complaint. Wally opposed this request. Subsequently, in November 2010, the trial court heard additional argument on the nonsuit motion. Following this argument, the court again adopted its tentative ruling granting nonsuit.

On November 10, 2010, the trial court issued its order granting Wally's motion for nonsuit. The court stated that the theory of recovery stated in the complaint is the following: Tony " 'accepted and relied on this Trust pledge *as a contract* (emphasis added) and in faithful performance of same has remained active in the business of LBI since 1987, and continues to remain active in said business, however, [Champ] elected to not remain in the business, and thus forfeited his expectancy interests in the LBI business and [two] Osgood Propert[ies].' " The court explained that Tony's claims were based upon the terms of the original trust.

The court noted that Wally's grounds for the motion of nonsuit were: "1. Declaratory relief is not available for a dispute over the terms of a trust [under] section 1060; [¶] 2. Plaintiffs do not have a present enforceable right; and [¶] 3. This action is barred by . . . section 366.3." The trial court also considered Tony's various arguments of waiver. The trial court found that there was no waiver and granted Wally's nonsuit on all three of the grounds urged by Wally.

8

On November 11, 2010, and with the agreement of the parties, the trial court severed the cross-action for partition.

Tony filed a timely notice of appeal from the order granting Wally's nonsuit.[4]

On April 11, 2011, Wally filed a motion for summary judgment on her partition action. She asserted that she was entitled to interlocutory judgment pursuant to section 872.720, subdivision (a). Tony filed opposition. In his separate statement of facts he did not dispute any of the facts set forth in Wally's separate statement except to assert that his declaration and Wally's deposition showed that Ludgwig was too sick to agree to the amended trust and that his signature was the result "of fraud, undue influence, breach of fiduciary duty, etc." He set forth additional facts that he asserted were from Wally's deposition. Wally filed objections to these additional facts on various grounds, including that the evidence was irrelevant.

The trial court held a hearing on Wally's summary judgment motion on September 8, 2011, and took the matter under submission. On September 20, 2011, the court issued a minute order granting Wally's motion for summary judgment. The court also sustained and overruled various evidentiary objections submitted by Wally. The court issued an order and Tony filed written objections to the proposed order and judgment.

On November 8, 2011, the trial court filed its order, which granted interlocutory judgment for partition. The court found that Wally established that she was the trustee of the survivor's trust and trustee of the bypass trust under the amended trust. The court found that Wally had "submitted sufficient evidence indicating that there is no triable issue of material fact as to her 'right' to partition the real property located at 42088 Osgood Road . . . , which has not been waived. In her moving papers, Wally, as trustee, has demonstrated clear title to the Property as follows: 84.97 [percent] undivided ownership by Wally as trustee of the Survivor's Trust; 9.26 [percent] undivided ownership by Wally as trustee of the Bypass Trust; and 5.77 [percent] by [Tony]."

---

[4] On January 26, 2011, Tony filed a petition for instructions in the probate department and Wally sought to abate that action. On August 3, 2011, the trial court abated the probate action until disposition of the appeal.

In its order, the trial court also addressed Tony's argument that Wally waived her right to partition. The court stated that Tony alleged waiver "by virtue of the existence of two enforceable contracts that require the testamentary distribution of estate assets, including the Property at issue here, upon Wally's death. . . ." The court noted that Wally "objected to virtually all of the evidence" presented by Tony on relevancy grounds and the court had sustained these objections. The court found that Tony had submitted insufficient evidence indicating any waiver of the " 'right' to partition."

The trial court addressed whether the partition should be by sale or in kind. The Property is landlocked and has no street frontage. Thus the court concluded that it would be impossible to partition the Property without violating local zoning ordinances. The court concluded, "[T]here is no triable issue of material fact that partition by sale is 'more equitable' than partition in kind."

The trial court filed its interlocutory judgment of partition on December 7, 2011. Tony filed a timely notice of appeal from the partition judgment.

Tony requested that we consolidate his appeals from the order granting the nonsuit on his request for declaratory relief and from the order of partition. We granted that request on January 6, 2012.[5] The parties filed their briefs and requests for judicial notice.[6]

---

[5] Since we have consolidated the appeals we need not consider Tony's argument that the appeal from the nonsuit order is not premature.

[6] We note that Tony filed a request for judicial notice that this court granted on November 29, 2011. Tony had requested judicial notice of matters and proceedings of various related cases in the superior court. These documents were attached together in a one-inch thick bound volume; the one-inch thick volume did not have numbered pages. Additionally, the bound volume contained no tabs or other markers indicating the beginning or ending of the cited exhibits.

Tony made this court's task much more difficult by not numbering the pages or referring to any page numbers when citing to the judicially noticed documents. This court had to search through the one-inch thick volume in order to find the citation to a multi-paged exhibit with no page numbers. Thus, all of the references in the briefs to these judicially noticed documents violated California Rules of Court rule, 8.204(a)(1)(C). This rule provides that each brief must "[s]upport any reference to a

10

## DISCUSSION

### I. *Nonsuit on Tony's Complaint*

### A. *Standard of Review*

Under section 581c, subdivision (a): "Only after, and not before, the plaintiff has completed his or her opening statement, or after the presentation of his or her evidence in a trial by jury, the defendant, without waiving his or her right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit." A nonsuit on the opening statement is warranted only if it is clear there will be no evidence of sufficient substantiality to support a judgment in favor of the plaintiff. (*Willis v. Gordon* (1978) 20 Cal.3d 629, 633.)

" 'The standard of review for a nonsuit after [the] conclusion of the opening statement is well settled. Both the trial court in its initial decision and the appellate court on review of that decision must accept all facts asserted in the opening statement as true and must indulge every legitimate inference[,] which may be drawn from those facts. [Citations.] A nonsuit at this early stage of the proceedings is disfavored. [Citation.] It can only be upheld on appeal if, after accepting all the asserted facts as true and indulging every legitimate inference in favor of plaintiff, it can be said those facts and inferences lead inexorably to the conclusion plaintiff cannot establish an essential element of its cause of action or has inadvertently established uncontrovertible proof of an affirmative defense. [Citations.]' [Citation.]" (*Galanek v. Wismar* (1999) 68 Cal.App.4th 1417, 1424.)

### B. *The Trial Court Properly Dismissed the Claim for Declaratory Relief*

The trial court granted Wally's motion for nonsuit on all three of the following grounds: declaratory relief was not available under section 1060, Tony did not have a

---

matter in the record by a citation to the volume and *page number* of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C), italics added.)

On February 14, 2013, we returned Wally's brief for failing to comply with California Rules of Court, rule 8.204(a)(1)(C). A corrected brief was filed with this court on February 21, 2013.

present enforceable right, and the statute of limitations under section 366.3 barred this action.**7**  It also found that Wally had not waived her right to raise the statute of limitations and other defenses to Tony's request for declaratory relief.

Declaratory relief claims are governed by section 1060, which provides as follows: "Any person interested under a written instrument, *excluding a will or trust,* or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property, or with respect to the location of the natural channel of a watercourse, may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract." (Italics added.)

"Moreover, '[d]eclaratory relief operates prospectively to declare future rights, rather than to redress past wrongs.  [Citation.]'  [Citations.]  [It] ' "serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them." [Citations.]'  [Citation.]" (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 607-608.)

Tony argues that he was entitled to declaratory relief based on his contract rights that were independent of the terms of the original or amended trust.  He maintains that his rights were based on an oral promise that he would obtain LBI and the Osgood properties upon the death of both his parents and that the original trust "was simply corroborative of those agreements."  He claims that Ludwig agreed to sign the original trust only after Wally agreed that LBI and the two Osgood properties would go to the son or sons working for LBI at the time of the deaths of both Ludwig and Wally.

---

**7**  In his briefs in this court, Tony does not include any specific argument or supporting authority regarding the nonsuit on his injunctive cause of action.  Therefore, we will consider any appeal of this claim waived.

We, however, agree with the trial court that Tony was not entitled to declaratory relief under section 1060. Section 1060 permits a party to seek a declaration of rights under "a written instrument, excluding a will or trust," and the *only* written agreement cited and attached to Tony's pleading is the original trust. Tony's allegations throughout his complaint refer to the original trust. For example, he asserts the following: "As an important feature of their estate planning, and a prominent feature of [the original trust], the Trustors specifically provided in Paragraph 7.3C of the Trust Instrument . . . , that upon the death of the surviving spouse, the LBI business and the Osgood [properties], would be distributed to [Tony] . . . provided that [he] remained active in LBI ('Trust pledge')." In his pleading, Tony asked the court to declare "[t]hat acts intended to terminate [Tony's] use and possession of the Osgood [properties] . . . violate the enforceable, binding contract to convey the Osgood [properties] to [Tony] upon the death of the surviving Trustor of the [original trust], and constitute anticipatory breaches of said contract, and such actions are therefore unenforceable and invalid." Accordingly, we agree with the trial court that Tony's request for declaratory relief was based on the original trust and section 1060 expressly excludes any declaratory relief based on a trust.

Tony cites a number of cases in support of his argument that he is entitled to declaratory relief. (*Caldwell v. Rosenberg* (1941) 47 Cal.App.2d 143; *Sonnicksen v. Sonnicksen* (1941) 45 Cal.App.2d 46; *Moklofsky v. Moklofsky* (1947) 79 Cal.App.2d 259; *Brown v. Superior Court* (1949) 34 Cal.2d 559 (*Brown*); *Gardiner v. Gaither* (1958) 162 Cal.App.2d 607; *Brewer v. Simpson* (1960) 53 Cal.2d 567; *Goldstein v. Hoffman* (1963) 213 Cal.App.2d 803; *Estate of Cates* (1971) 16 Cal.App.3d 1; *Warren v. Kaiser Foundation Health Plan, Inc.* (1975) 47 Cal.App.3d 678; *McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 799-800; *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559.) All of the cases cited by Tony, except for two, were decided prior to 1994 and the statute was amended in 1994. Prior to the 1994 amendment, section 1060 provided "[a]ny person interested under a deed, will or other written instrument, or under a contract, or who desires a declaration of his rights or duties with respect to another may . . . bring an original action . . . for a declaration of his rights

13

and duties. . . ." The 1994 amendment substituted "written instrument, excluding a will or a trust" for "deed, will or other written instrument." (former § 1060.) Thus, the current statute, unlike the former, expressly excludes wills and trusts; any cases decided prior to this amendment are not relevant.

The other two cases cited by Tony, *McClain v. Octagon Plaza, LLC, supra,* 159 Cal.App.4th 784 and *Wilson & Wilson v. City Council of Redwood City, supra,* 191 Cal.App.4th 1559 are also inapplicable to the issue raised by this appeal. The court in *McClain,* concluded that the pleading adequately alleged a cause of action for declaratory relief because the shopping center tenant had pled "an 'actual controversy' regarding [the tenant's] obligations to pay rent and other expenses under the lease." (*McClain,* at p. 800.) In *Wilson,* the court concluded that declaratory relief to protect property from possible future condemnation was not ripe for adjudication. (*Wilson,* at pp. 1582-1583.) Neither of these cases is germane to the present case as they did not involve a pleading that even mentioned a trust or a will.

Tony argues in his reply brief that "[c]ase authority also recognizes that a promisee may seek to impose a constructive trust as a remedy . . . , and declaratory relief is an appropriate method to establish such a trust" and cites *Cabral v. Soares* (2007) 157 Cal.App.4th 1234 (*Cabral*) and *Estate of Sargavak* (1953) 41 Cal.2d 314. *Cabral* actually undermines Tony's position. The court in *Cabral* held that the plaintiff's complaint was essentially attempting to challenge the validity of the will and therefore the plaintiff was not entitled to declaratory relief under section 1060. The court stressed that "[a] dispute concerning the meaning or validity of the provisions of a will cannot be resolved by declaratory judgment." (*Cabral,* at p. 1239.) To the extent the complaint relied on the "alternative allegation" that the will was changed in an attempt to defraud creditors, the *Cabral* court concluded that "the complaint still seeks to effect a distribution of the estate in contravention of the terms of the amended will." (*Id.* at p. 1240.) The *Cabral* court rejected, as the trial court in the present case did, any request for declaratory relief that required the court to interpret provisions in a will (or trust).

14

Tony appears to be ignoring the aforementioned holding in *Cabral,* and cites to that portion of the decision that concluded that the trial curt erred in denying the plaintiff the opportunity to amend her complaint to allege a constructive trust. (*Cabral, supra,* 157 Cal.App.4th at pp. 1240-1242.) When concluding that the lower court should not have sustained the demurrer without leave to amend, the appellate court in *Cabral* stated that a two-step analysis occurs. First, the court determines whether there was an oral promise by the testator to devise the property in a particular manner in reliance upon an agreement or understanding with the devisee that the latter will hold it in trust for, or convey it to, a third person. (*Id.* at p. 1241.) When there is such a promise, the devisee holds the property upon a constructive trust for a third person and the court may consider extrinsic evidence to determine whether " 'a constructive trust would arise in favor of the beneficiaries.' " (*Ibid.,* quoting *Estate of Sargavak, supra,* 41 Cal.2d at p. 321.) The second step is to determine whether the plaintiff is entitled to enforce the right to impose such a constructive trust. (*Cabral,* at p. 1242.)

Although Tony's argument is not entirely clear, he cannot amend his complaint in the present case to allege that he is entitled to a constructive trust. In *Cabral,* there was no attempt to have the court consider evidence of an oral promise that was contrary to the express provisions of the written instrument. Here, Tony's claim would require the trial court to disregard the express provision in the original trust that stated that the trust could "be revoked in whole or in part with respect to community property by an instrument in writing signed by either Trustor . . . ." As discussed more extensively below, Tony cannot attempt to introduce extrinsic evidence to contradict the unambiguous provision in the trust.

In the present case, Tony's cause of action for declaratory relief requires the court to interpret the provisions in the original trust as well as to determine the validity of the amended trust. Indeed, he argues in his brief in this court that the amended trust did not reflect Ludwig's wishes and that Ludwig only signed the original trust on the condition that the sons who continued to work for LBI would receive LBI. He maintains that Wally exercised undue influence over Ludwig when she had him sign the amended trust

15

and that the amended trust should be disregarded. His claims thus require the court to interpret the original and amended trust and the trial court correctly found that Tony was not entitled to declaratory relief under section 1060. (See *Cabral, supra,* 157 Cal.App.4th at p. 1239.)

Since we conclude that Tony is not entitled to declaratory relief under section 1060 because the statute expressly excludes a declaration of rights based on a trust instrument, we need not consider the trial court's other independent grounds for granting Wally's nonsuit.

## C. *Jurisdiction*

Tony maintains that if the trial court did not have jurisdiction under section 1060 to hear his claim for declaratory relief, then it did not have jurisdiction to grant a nonsuit. He argues that courts' lacking jurisdiction over the subject matter of an action do not have the power to hear or determine the case. (See, e.g., *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660.)

Tony appears to be arguing that the trial court did not have fundamental jurisdiction, but this argument has no merit. "Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288.) Here, there was no allegation or finding that the trial court did not have the authority to determine whether Tony could state a cause of action for declaratory relief. The trial court did not rule that it did not have jurisdiction over the issue before it. The court found that Tony was not entitled to the relief requested under section 1060.

The present action did not come under the general subject matter jurisdiction of the probate court because the issue did not involve the distribution of or dispute over a decedent's property. Tony invoked the superior court's original jurisdiction (Cal. Const., art. VI, § 10), seeking declaratory and injunctive relief. The trial court clearly had the authority in the present case to determine whether Tony was entitled to declaratory relief under section 1060.

16

Tony also makes a somewhat unintelligible argument that the trial court acted in excess of its jurisdiction.  As already discussed, the trial court properly found that Tony was not entitled to declaratory relief and thus it did not act in excess of its jurisdiction.[8]

## II. *Summary Judgment in Favor of Wally on Her Cross-Complaint for Partition*

## A. *Standard of Review*

A party is entitled to summary judgment if there is no triable issue of material fact and the party is entitled to judgment as a matter of law.  (§ 437c, subd. (c).)  "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  When the cross-complainant is the moving party, the cross-complainant's initial burden is to produce evidence showing that each element of each cause of action has been established.  (§ 437c, subd. (p)(1).)  If a moving plaintiff satisfies this initial burden, the burden shifts to the cross-defendant to set forth "specific facts" showing that a triable issue of material fact exists as to the cause of action or a defense.  (*Ibid.*)  The cross-defendant "may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto."  (*Ibid.*)

"Despite the shifting burdens of production, the . . . moving party[ ] always bears the ultimate burden of persuasion as to whether summary judgment is warranted.  [Citations.]"  (*Garcia v. W & W Community Development, Inc.* (2010) 186 Cal.App.4th 1038, 1041.)  "In making this determination, courts view the evidence, including all reasonable inferences supported by that evidence, in the light most favorable to the nonmoving party."  (*Ibid.*)  " 'We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which

---

**8** We do not need to address Tony's argument that "the trial court prejudicially erred in refusing to permit [him] to prove a present protectable right."  This argument is essentially incomprehensible.  Furthermore, as discussed above, we conclude that the trial court correctly found that section 1060 barred his request for declaratory relief.

the court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Richard B. LeVine, Inc. v Higashi* (2005) 131 Cal.App.4th 566, 572.)

We do not, however, review the trial court's rulings on evidentiary objections de novo. " '[T]he weight of authority holds that an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard. [Citations.]' [Citation.]" (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335.)

## B. *General Principles Regarding Partition Actions*

A co-owner of real or personal property may bring an action for partition. (§ 872.210.) The term "partition" means " 'the procedure for segregating and terminating common interests in the same parcel of property.' " (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1404-1405.) The primary purpose of a partition suit is to sever the co-ownership and divide the existing property interests. (See *Rancho Santa Margarita v. Vail* (1938) 11 Cal.2d 501, 539; *LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 493 [the purpose of partition is to " 'permit cotenants to avoid the inconvenience and dissension arising from sharing joint possession of land' "].)

The statutes governing partition are found at section 872.010 et seq. A co-owner of property has an absolute right to partition unless barred by a valid waiver. (§ 872.710, subd. (b).) "[T]he right of partition may be waived by contract, either express or implied." (*American Medical International, Inc. v. Feller* (1976) 59 Cal.App.3d 1008, 1014 (*Feller*).) "[A]lthough the action of partition is of statutory origin in this state, it is nonetheless an equitable proceeding." (*Elbert, Ltd. v. Federated Income Properties* (1953) 120 Cal.App.2d 194, 200.)

"If the court finds that the plaintiff is entitled to partition, it shall make an interlocutory judgment that determines the interests of the parties in the property and orders the partition of the property and, unless it is to be later determined, the manner of partition." (§ 872.720, subd. (a).) The manner of partition may be in kind or by sale. (§§ 873.210-873.50.) Partition in kind is favored. (*Butte Creek Island Ranch v. Crim* (1982) 136 Cal.App.3d 360, 365 (*Butte Creek*).) In lieu of dividing the property among

18

the parties, the court shall order the property be sold and the proceeds divided among the parties in accordance with their interests in the property if the parties agree to such relief or the court determines sale and division of the proceeds would be more equitable than a division of the property. (§ 872.820.)

" '[I]n many modern transactions, sale of the property is preferable to physical division since the value of the divided parcels frequently will not equal the value of the whole parcel before division. Moreover, physical division may be impossible due to zoning restrictions or may be highly impractical, particularly in the case of urban property. [¶] The [Law Revision] Commission recommends that partition by physical division be required unless sale would be "more equitable." This new standard would in effect preserve the traditional preference for physical division while broadening the use of partition by sale.' [Citation.]" (*Butte Creek, supra,* 136 Cal.App.3d at p. 365.)

## C. *Applying the Law on Partition to the Facts of the Present Case*

The trial court found that Wally presented undisputed evidence that she was entitled to partition 42088 Osgood and that Tony had failed to present admissible evidence to raise a triable issue of fact that Wally waived her partition rights. The trial court also found that the sale of the Property was more equitable than physically dividing the property.

The undisputed evidence showed that Wally was a co-owner of the Property and that title was clear. Wally presented evidence that Ludwig and she purchased the Property as joint tenants on May 6, 1983. On September 19, 1990, they transmuted the Property from a joint tenancy to community property. Ludwig and Wally executed their original trust in 1992, and were the co-trustees. The original trust states at paragraph 8.15 that the trustee shall have the power to partition any of the trust property. Ludwig and Wally transferred the Property to the original trust on December 29, 1992. On December 31, 1997, the co-trustees of the original trust, transferred an undivided 2.77 percent interest in the Property to Tony. A few years later, they transferred an additional three percent interest in the Property to Tony.

19

On May 21, 2003, Ludwig and Wally executed the amended trust. The amended trust provides at paragraph 8.5 that the trustee shall have to power to partition the trust property. The amended trust states at paragraph 1.3A that upon the death of either co-trustee, the survivor is the sole successor trustee, and at paragraph 5, the amended trust states that the surviving trustee is to divide the trust estate into a survivor's trust and a bypass trust. Ludwig died on July 7, 2003. The trust transfer deed recorded on May 25, 2006, stated that Wally, as trustee, transferred the trust's interest in the Property as follows: 84.97 percent to Wally as trustee of the survivor's trust, and 9.26 percent to Wally as trustee of the bypass trust. Thus, Wally had 94.23 percent interest in the Property and Tony had a 5.77 percent interest.

The record also contained evidence showing that fairness required the sale of the property. Wally presented undisputed evidence that the Property is landlocked, and physically dividing the property would violate local zoning ordinances.

Since the foregoing evidence supported a finding that Wally was entitled to partition the Property under section 872.710, subdivision (b), the burden shifted to Tony to raise a triable issue of fact that Wally was not entitled to partition and/or that fairness required that the Property be physically divided rather than sold. Tony attempted to submit evidence, primarily from Wally's deposition, to show that the amended trust was invalid and that the partition was unfair to him. The trial court sustained Wally's objections to Tony's evidence. Thus, the record on appeal does not contain any evidence raising a triable issue of fact regarding Wally's right to partition the Property and have it sold. Accordingly, the grant of summary judgment was proper unless Tony can establish the trial court abused its discretion in sustaining Wally's objections to his evidence.

**D. *No Abuse of Discretion When Sustaining Wally's Objections to the Evidence***

**1. *Evidence of an Oral Agreement***

Tony contends that he presented evidence of waiver and the right to partition can be waived by an express or implied agreement. He maintains that the trial court should have considered his evidence that Wally and Ludwig made a commitment that compelled "the continued existence of LBI and intactness of the property." He asserts that these oral

commitments induced him to remain active in the business.

At common law and in equity, co-owners of property are entitled to partition. (See, e.g., *Butte Creek, supra,* 136 Cal.App.3d at pp. 364-365.) Section 872.710, subdivision (b), provides that except in situations not relevant to the present case, "partition as to concurrent interests in the property shall be as of right unless barred by a valid waiver." This statutory right might be waived. Courts have found waiver based on contract, either express or implied. (See *LEG Investments v. Boxler, supra,* 183 Cal.App.4th at p. 493.) However, "implied waiver of the right to partition is a disfavored interpretation." (*Id.* at p. 496, fn. omitted.)

Waiver of the right to partition under section 872.710, subdivision (b) occurs when there is evidence of an actual or implied contract expressing an intent to waive the rights under the statute. (See, e.g., *Penasquitos, Inc. v. Holladay* (1972) 27 Cal.App.3d 356, 358 [implied waiver of partition when cotenants entered into a long term lease with an option to buy at a stated price]; *Harrison v. Domergue* (1969) 274 Cal.App.2d 19, 21 ["An agreement giving rights of first refusal to the other tenants implies an agreement not to bring a partition action in lieu of a sale to the cotenants"]; *Pine v. Tiedt* (1965) 232 Cal.App.2d 733 [implied waiver of partition when cotenants invested in property, which was subject to a long-term lease, with a view toward obtaining a secure source of investment income]; *Schwartz v. Shapiro* (1964) 229 Cal.App.2d 238 [could not partition without offering other co-owner the right to purchase the property because co-owners had executed a written agreement that provided that one party would not sell his one-half interest without giving the other co-owner the right to purchase it at the original purchase price]; *Thomas v. Witte* (1963) 214 Cal.App.2d 322 [implied waiver of partition when cotenants agreed to a plan designed to develop and operate property under a long term oil and gas lease]; *Miranda v. Miranda* (1947) 81 Cal.App.2d 61 [formerly married woman and man had owned property as joint tenants and woman who had not remarried and was living in the home with the children could not seek partition of the property because the divorce agreement provided that the property was to remain in the parties' names as long as the woman did not remarry and it was occupied by her as a home for the children].)

21

In the present case, none of Tony's evidence was admissible to show waiver. The express terms of the original trust provided at paragraph 8.15, under the heading of "Trustee's Powers," as follows: "The Trustee shall have the power to partition, allot and distribute the Trust Estate, on any division or partial or final distribution of the Trust Estate, in undivided interests or in kind, or partly in money and partly in kind, at valuations determined by the Trustee, and to sell such property as the Trustee may deem necessary to make division or distribution. In making any division or partial or final distribution of the Trust Estate, the Trustee shall be under no obligation to make a pro rata division, or to distribute the same assets to beneficiaries similarly situated, as long as the respective assets allocated to separate Trusts or shares, or distributed to such beneficiaries, have equivalent or proportionate fair market value."

The absolute right to partition was also set forth in the amended trust. In paragraph 8.5 of the amended trust, the trustee was given the power to, among other things, partition and divide the property.

Thus the original trust and amended trust are absolutely clear and unambiguous. They provide the co-trustee with the absolute right to partition. In opposition to this evidence, Tony sought to have the trial court consider parol or extrinsic evidence. Extrinsic evidence that contradicts the unambiguous written terms in the trust is inadmissible. "[W]hen . . . the claimed oral agreement is a direct contradiction of the written instrument, it is clear that the issue has already been resolved. . . . 'Testimony of intention which is contrary to a contract's express terms . . . does not give meaning to the contract; rather it seeks to substitute a different meaning. It follows . . . that such evidence must be excluded.' [Citations.]" (*Banco do Brasil, S.A. v. Latian, Inc.* (1991) 234 Cal.App.3d 973, 1008, fn. omitted, overruled on another point in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169, 1182-1183.)

We are aware of no court that has held that an implied contract or oral contract can waive the statutory rights under section 872.710 when a written contract expressly states that the person has the right to partition. Indeed, such a holding would be contrary to the

22

law because, as stressed, extrinsic evidence cannot be used to rewrite the terms of a written contract or agreement.[9]

## 2. *Evidence of the Detrimental Effect of the Partition on Tony*

Tony complains that the trial court did not consider his evidence that the Property is necessary for the operation of LBI. He maintains that this evidence was relevant to the issue of fairness, and partition actions are governed by equity principles. (See, e.g., *Wallace v. Daley* (1990) 220 Cal.App.3d 1028, 1035.)

Although a judgment of partition is subject to the general equitable requirement of fairness, it must still comply with any applicable laws, regulations, or ordinances governing the division, sale, or transfer of property. (*Penasquitos, Inc. v. Holladay, supra,* 27 Cal.App.3d at p. 358.) Despite the fact that the right to partition is subject to the requirement of fairness (*Feller, supra,* 59 Cal.App.3d at p. 1015; *Penasquitos,* at p. 358), partition cannot be denied because it will result in financial loss to the tenants (*Feller,* at p. 1013; *De Roulet v. Mitchel* (1954) 70 Cal.App.2d 120, 124).

Tony's evidence related to the economic loss he would suffer based on his inability to continue to run the company. The fact that it would place an economic hardship on Tony was not relevant to the question whether Wally had the right to partition the Property.

## E. *Equity Does not Bar Partition*

Tony maintains that principles of equity and fairness bar partition. He contends that permitting Wally to partition the Property defeats the purpose of the original trust, which was, according to him, to ensure the continued survival and success of LBI. Additionally, he claims that the trial court should have found that Wally was not entitled to partition based on the doctrine of equitable estoppel.

---

[9] Since we conclude that Tony's evidence was inadmissible based on the parol evidence rule, we need not consider the extensive arguments by both parties about the application of the statutes of limitation under Probate Code section 16061.8 and Code of Civil Procedure section 366.3.

23

When arguing that the purpose of the original trust "was to ensure the continued survival and success of LBI, as well as to reward Tony for his life-long devotion to the family business," Tony does not cite any of the language in the original trust to support this argument. The only evidence he cites is his own declaration.

Partition is not inconsistent with the purpose of the original trust as evidenced by the language of the provisions in the original trust. The original trust did not indicate that Ludwig and Wally could not modify the terms of the trust as it stated that the trust could "be revoked in whole or in part with respect to community property by an instrument in writing signed by *either* Trustor . . . ." (Italics added.) Under the trustee's powers, as already noted, the trustee had the power to partition and there was no restriction placed on the trustee to keep the Property or to ensure that LBI survives. The instructions regarding LBI are in paragraph 7.3 of the original trust, and come into play only after the death of the surviving spouse. Nothing in the trust prevents the trustee from taking any action that may impact LBI's survival.

Partition is consistent with the unequivocal language in the original trust. Tony does not argue that equity required the trial court to divide the Property in kind rather than order a sale, and thus he has waived this issue. In any event, he could not have prevailed on this argument. As already noted, the Property is landlocked, and physically dividing the property would violate local zoning ordinances.

Tony's other major argument is that he relied on the oral promises that he would receive the Property and LBI if he continued to work in the family business, and the court in equity should have estopped Wally from partitioning the property. "[T]he doctrine of equitable estoppel is a rule of fundamental fairness whereby a party is precluded from benefiting from his inconsistent conduct which has induced reliance to the detriment of another. [Citations.]" (*In re Marriage of Valle* (1975) 53 Cal.App.3d 837, 840, fn. omitted.) The elements of promissory estoppel are: " ' "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by [the party's] reliance." ' " (*Joffe v. City of Huntington Park*

24

(2011) 201 Cal.App.4th 492, 513.)

In support of the argument that he relied on the oral promises of Ludwig and Wally, Tony cites *Juran v. Epstein* (1994) 23 Cal.App.4th 882 (*Juran*), *Estate of Housely* (1997) 56 Cal.App.4th 342 (*Housely*), and *Brown, supra,* 34 Cal.2d 559.[10]  In *Juran,* the court held that equitable estoppel principles could be applied to enforce an oral agreement not to revoke a will.  (*Juran,* at pp. 892-897.)  The court in *Housely* enforced in equity an oral promise to leave all of the father's property to the son in exchange for the son's daily care of the father.  (*Housely,* at pp. 352-358.)  In both *Juran* and *Housely,* the courts applied the doctrine of equitable estoppel to prevent the statute of frauds defense to an oral agreement.

In contrast to both *Juran* and *Housely*, here, as already stressed, Tony is attempting to rely on principles of estoppel and evidence of an oral agreement to contradict the express terms of a written instrument.  Estoppel cannot be used in the present case because it is not reasonable to rely on oral representations that contradict a written agreement.  (See, e.g., *Malmstrom v. Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 318-319 [rejecting estoppel claim because reliance on representations contradicting written agreement is not reasonable].)

Tony's reliance on *Brown, supra,* 34 Cal.2d 559, is similarly unavailing.  In *Brown,* the husband and wife promised to make mutual wills.  (*Id.* at p. 563.)  The husband's will stated "that it was made in consideration of a mutual will by [his wife] and

---

**10**  To the extent that Tony is asserting that he relied on paragraph 7.3C in the original trust, that argument has no merit.  Paragraph 7.3C provides for the distribution of LBI to Tony upon the death of the surviving spouse.  However, as repeatedly stressed, the original trust stated that the trust could "be revoked in whole or in part with respect to community property by an instrument in writing signed by either Trustor . . . ."  It also gave the trustee the power "to partition, allot and distribute the Trust Estate, on any division or partial or final distribution of the Trust Estate, an undivided interests or in kind, or partly in money and partly in kind, at valuations determined by the Trustee, and to sell such property as the Trustee may deem necessary to make division or distribution. . . ."  Thus, it was not reasonable to rely on paragraph 7.3C in the original trust when this document gave Wally, as co-trustee, the power to modify or revoke the terms in the original trust.

'in pursuance to an agreement between myself and my said wife . . . for the making of these mutual wills on the part of each of us.' It then provided that his property should go to [his wife], if she should survive him, otherwise his entire estate, including any and all property or estate received from [his wife], should go one-half to his kindred and one-half to her kindred." (*Ibid.*) After the husband died, the surviving spouse made a new will that was contrary to the terms of the agreement with the deceased spouse, and the third-party beneficiaries of the contract sued the surviving spouse to enforce the terms of the agreement. The Supreme Court concluded: "Where two parties agree to make mutual wills, each promising to dispose of his property to the other or, if the other be dead, to certain third persons, and one of the parties performs by leaving his property to the other, the intended devisees and legatees are entitled to enforce their rights as beneficiaries under the agreement. The contracting party who survives becomes estopped from making any other or different disposition of the property, and his obligations under the agreement become absolutely irrevocable and enforceable against him, at least where he avails himself of the provisions of decedent's will in his favor and accepts substantial benefits thereunder. [Citations.]" (*Id.* at p. 564.)

In *Brown, supra,* 34 Cal.2d 559, the court provided the remedy of " 'quasi specific performance' " to enforce the term of the oral agreement, but the oral agreement was consistent with the written term in the will that confirmed that the husband and wife had made an agreement about the disposition of their property. (*Id.* at p. 564.) Here, as repeatedly stressed, the terms of the oral promise that Tony wished to introduce into evidence contradicted the explicit provisions in both the original and amended trust.

Accordingly, the trial court properly granted Wally's motion for summary judgment and principles of fairness did not create a triable issue of fact.

## F. *The Consideration of Wally's Evidence Did Not Result in Any Prejudicial Error*

Tony objects to both the evidence and argument on the statute of limitations that Wally advanced in the trial court. He argues that this evidence and argument were not raised in her moving papers and were improperly submitted with her reply papers in opposition to his evidence regarding the oral agreements.

Even if we presume that the trial court should not have considered the evidence submitted with Wally's reply brief, any alleged evidentiary error was harmless.  An erroneous evidentiary ruling requires reversal only if "there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error.  [Citation.]"  (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 815; see Evid. Code, § 354.)  Here, Wally submitted sufficient undisputed evidence in her moving papers to make a prima facie case.  Indeed, the trial court expressly found that Wally established in her moving papers that she had clear title to the Property.  As already discussed, Tony did not provide any admissible evidence and therefore Wally was entitled to partition as a matter of law.  Accordingly, any alleged error related to the consideration of evidence regarding the statute of limitations submitted in Wally's reply to Tony's opposition to summary judgment was harmless.

**G.**  *The Trial Court Had Jurisdiction*

**1.**  *The Effect of the Appeal*

Tony contends that the trial court could not adjudicate the partition action because his appeal of the order granting the nonsuit against his complaint was pending.[11]  Tony's argument is that his filing of the notice of appeal from the order granting the nonsuit against his complaint against Wally, individually, divested the trial court of jurisdiction to adjudicate the action by Wally, as the trustee of the original and amended trust, for partition.

Section 916, subdivision (a) provides that "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and

---

[11]  Tony also claims that the trial court did not have jurisdiction because there is a probate matter pending.  The probate matter, however, has been abated and Tony has failed to show that the probate court, rather than the trial court, had jurisdiction over the partition action.

27

not affected by the judgment or order." The appeal "vests jurisdiction in the appellate court and terminates the jurisdiction of the lower court." (*Estate of Hanley* (1943) 23 Cal.2d 120, 123.)

"It is settled that the rule requiring dismissal does not apply when the case involves multiple parties and a judgment is entered which leaves no issue to be determined as to one party." (*Justus v. Atchison* (1977) 19 Cal.3d 564, 568, disapproved on other grounds in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 171; see also *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 437.) If a judgment determines all of a plaintiff's rights in one capacity, the judgment may be final even though the action is still pending on a claim brought in a different capacity. (See *First Security Bank of Cal., N.A. v. Paquet* (2002) 98 Cal.App.4th 468, 474-474.) In *Dominguez v. City of Alhambra* (1981) 118 Cal.App.3d 237, the court held that denial of a motion for leave to file an amended complaint was appealable because it operated as a final determination of the plaintiff's rights as the administratrix of an estate, even though the plaintiff's complaint as an individual remained pending. (*Id.* at pp. 241-242.)

Here, the declaratory action completely disposed of all the issues between Tony and Wally, in her individual capacity. Thus, the trial court still had jurisdiction over the cross-action for partition, as that was between Tony and Wally, in her capacity as the trustee of the original and amended trust.

## 2. *Jurisdiction over the Cross-Complaint*

Finally, Tony asserts that the partition cross-action "should have been a nullity." He maintains that since Wally was sued as an individual, she could not file a cross-complaint as the trustee.

On September 24, 2009, Tony filed his answer to Wally's cross-complaint for partition. He did not object to the propriety of the cross-complaint. Tony did not object to Wally's cross-complaint until the hearing on the motion for summary judgment on September 8, 2011. At the summary judgment hearing, the trial court noted that Tony had not challenged the cross-complaint when it was filed. The court pointed out that there could have been two separate lawsuits and the court could have consolidated them.

28

Tony answered Wally's cross-complaint on September 24, 2009, and then waited almost two years to object on the basis that he had sued Wally in her individual capacity but she had filed her cross-complaint in her capacity as a trustee. It is now too late to object that the cross-complaint does not come within the scope of the provisions of section 428.10.[12] "The court had jurisdiction of the subject-matter, and by the appearance, obtained personal jurisdiction of the parties. All other objections to the manner in which the issue was brought before the court were waived by this conduct of the parties." (*Riverside Heights Water Co. v. Riverside Trust Co.* (1906) 148 Cal. 457, 469.)

## DISPOSITION

The order granting Wally's nonsuit and the interlocutory judgment for partition are affirmed. Wally is entitled to recover the costs of both appeals.

---

[12] Section 428.10 provides: "A party against whom a cause of action has been asserted in a complaint or cross-complaint may file a cross-complaint setting forth either or both of the following: [¶] (a) Any cause of action he has against any of the parties who filed the complaint or cross-complaint against him. . . . [¶] (b) Any cause of action he has against a person alleged to be liable thereon, whether or not such person is already a party to the action, if the cause of action asserted in his cross-complaint (1) arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause brought against him or (2) asserts a claim, right, or interest in the property or controversy which is the subject of the cause brought against him."

29

                                        _____
                                        Lambden, J.


We concur:


_____
Kline, P.J.


_____
Haerle, J.